## RUSSELL & CO. v. PEOPLE OF PUERTO RICO.

### No. 3617.

Circuit Court of Appeals, First Circuit.
March 10, 1941.

George M. Wolfson, of New York City (Francis E. Neagle, Cuthbert B. Caton, and Rounds, Dillingham, Mead & Neagle, all of New York City, on the brief), for appellant.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and Hartigan, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico reversing a judgment of the District Court of San Juan and ordering the defendant, Russell & Co., a sociedad en commandita organized under the laws of Puerto Rico, to pay to the plaintiff, the People of Puerto Rico, the sum of $61,617.04 with interest from and after June 24, 1930, on which date the original complaint was filed, plus the sum of $36,051.84, with interest from June 28, 1934, the date on which the amended complaint was filed, without costs and attorneys' fees. The case was tried on a stipulation of facts, some oral testimony and exhibits.

Russell & Co. is the owner and lessee of certain estates which lie along or abut upon the Jacaguas River, and is the owner by virtue of certain concessions and royal decrees of the Spanish Crown or by uses and prescriptions of the right to take water from the Jacaguas River for irrigating these estates in an amount equivalent to an aggregate of 12,612.1 acre feet per year. The said water was taken from the river bed through intakes constructed for that purpose by the predecessors in title of the defendant. The term defendant hereinafter used in this opinion shall include the defendant's predecessors in title. These concessions and water rights were in full force and effect from the earliest time down to their suspension by contract in 1914.

By a law approved September 18, 1908, called the Public Irrigation Law (Laws of Puerto Rico, 1909, p. 152) provision was made for the construction of a public irrigation system on the south coast of Puerto Rico. As part of the construction of this system, the plaintiff erected a dam, known as the Guayabal Dam, for the impounding and storing of a part of the water of the Jacaguas River. This dam extended across the bed of the Jacaguas River above the intakes which the defendant used for taking water for the irrigation of its lands.

It is clear that the construction of the irrigation system would impair or interfere with the rights of the owners of water concessions on the Jacaguas River unless special provisions were made to acquire these rights or provide for their equivalent. Therefore, the irrigation law provided that the plaintiff might acquire existing water rights on the Jacaguas River by condemnation, in which case the fair value thereof would be paid in cash to the owners. Provision also was made for the relinquishment of concessions by contracts between the plaintiff and the owners of water rights appurtenant to land within the irrigation district, in which case the value of the rights would not be paid in cash to the

owners but would be credited upon their proportionate part of future assessments for the construction and operation of the dam. The defendant's water rights were not condemned; nor did it relinquish them by contract, as provided in the irrigation law, since its lands were not within the irrigation district.

In 1913 the Public Irrigation Law was amended (Laws of Puerto Rico, 1913, Sp. Sess., p. 38). Section 13 of the amendment provided that "in the case of any land carrying a water right or concession of which the source of supply is destroyed or impaired by the construction or operation of the irrigation system, which shall not have been relinquished or surrendered to The People of Puerto Rico, such land shall be entitled to receive from the irrigation system an amount of water which is the reasonable equivalent in value of the said water right or concession". The Commissioner of the Interior was authorized to enter into agreements with the owners of water concessions whose lands had not been included in the irrigation district for the purpose of fixing the amount of water, and the time, place and conditions of delivery thereof, which the owners were to receive as such equivalent of their water rights in consideration of the suspension of such rights.

Pursuant to this section the Commissioner of the Interior entered into contracts with the defendant which provided for the suspension of the water rights of the defendant for the period of the contract and guaranteed the delivery of a specified equivalent amount of water to be delivered by the plaintiff at the intakes of the defendant. The contract stated the claims of the defendant to the water concessions and recited the construction of the irrigation system which might interrupt and impair these rights. It asserted that the water rights had not been relinquished or surrendered and that the defendant was unwilling to enter into an agreement for such surrender. The contract further stated that the amount of water taken by the defendant under its water rights varied from month to month in accordance with the rainfall so that it was impossible to determine in advance the amount of water to which the defendant was entitled for any fixed period of time. It declared the readiness of the plaintiff to deliver from the Jacaguas River the amount of water to which the defendant was entitled under its concession; but, in order to make more certain the operation of the irrigation system, it was declared to be the desire of the plaintiff to agree upon a regular amount of water which, under all the circumstances, would be considered the fair equivalent in value for irrigation purposes of the amount of water which the defendant would ordinarily take and use under its water rights. The parties then agreed as to the amounts of water which should be considered the fair equivalent in value of the water which the defendant had been taking under its concessions, and the plaintiff agreed to deliver such water at the various intakes provided by the defendant for the reception of the same. The contract also made provisions for the taking of torrential water by the defendant, but this does not become material in this suit. It was provided that in the case of underground filtration or seepage from behind the dam, the defendant might make use of the water in the river because of such seepage without payment or responsibility to the plaintiff. Provision also was made that if the defendant desired delivery of the water to be made at places other than those agreed upon the plaintiff would make such delivery, but "all extra expense occasioned by such delivery shall be borne by the [defendant], its successors or assigns". The fifth clause of the contract provided that the defendant should exercise its old concessions during ten days in each year in order to prevent their being destroyed by non-use.

The Public Irrigation Law also provided that all lands in the irrigation district should be annually assessed a uniform amount per acre, in order to defray the costs of construction, maintenance and operation of the system. Those persons whose water rights had been condemned and paid for in cash were taxed in the same manner as those land owners whose land was included in the irrigation district but who had never had any water rights or concessions. As provided by law, those owners of water rights appurtenant to lands within the irrigation district who had relinquished such rights by contract with the plaintiff had a certain part of the value of those rights credited each year against the tax assessed against them. No provision was made for taxing those owners of water rights whose lands were not included in the irrigation district and who had not relinquished their rights to the plaintiff, but who had contracts with the plaintiff providing for the delivery of an equivalent amount of water in consideration of the suspension of their water rights.

In 1921 the Legislature passed Act 49 (Laws of Puerto Rico, 1921, p. 366) entitled "An Act Fixing a Tax on Certain Lands using Water from the Southern Coast Public Irrigation System, on which Lands no Tax Whatsoever was Levied Under the Public Irrigation Law, and for Other Purposes." The first section levied a special tax on all parcels of land which are supplied with water for irrigation purposes from the irrigation system constructed pursuant to the Public Irrigation Law but which under the present law in no way contribute to the payment of expenses for the maintenance of the system. The second section set out the manner in which the taxes should be computed. The Treasurer was directed to find the total number of acres receiving water from the irrigation system including, in sub-section 4, land irrigated by water supplied by the plaintiff as the equivalent of the water formerly taken under the water rights suspended pursuant to the contracts between the plaintiff and the owners of such rights.[1] The Treasurer of Puerto Rico was then to take the amount estimated by the Commissioner of the Interior as necessary to defray the cost of operation and maintenance of the irrigation system for the following year and was to add thereto or subtract therefrom any deficit or surplus which was certified by the Commissioner of the Interior as remaining after the payment of expenses for operating and maintaining the system during the preceding year. The amount so determined was to be divided by the total number of acres and the result was to constitute the tax per acre which was to be levied during the next year on all lands supplied with water from the irrigation system which "in no other manner are subject to the payment of a tax to meet the cost of the irrigation system".

In 1924 the defendant brought suit in the District Court of the United States for Puerto Rico to enjoin the territorial government from attempting to collect any tax under Act 49. The government was so enjoined, but while an appeal was pending Congress passed a statute forbidding the maintenance of a suit to restrain the assessment or collection of any tax imposed by the laws of Puerto Rico. This court then remanded the case to the District Court with directions to dismiss the suit for want of jurisdiction. Gallardo v. Havemeyer, 1 Cir., 1927, 21 F.2d 1012.

On April 23, 1928, Congress passed an Act, 45 Stat. 447, for the relief of taxpayers whose pending suits had been dismissed because of the Act above mentioned. This statute provided that in cases pending on

---

[1] "Section 2. * * * The Treasurer of Porto Rico shall have charge of fixing the total number of acres receiving water from the irrigation system which includes: (1) tracts of lands subject to taxation pursuant to the provisions of the public irrigation law and amendments thereto, for the purpose of reimbursing the cost of the irrigation works; (2) tracts of land to which the Irrigation Commission acknowledged the right to the use of water or to which such right was acknowledged by the courts in cases of appeal, as rights acquired under the law for the use of water under prior concessions; (3) tracts of land irrigated with water delivered in accordance with acquired rights or concessions which have not been assigned, which said water, pursuant to the terms of the contracts entered into with the Commissioner of the Interior or because of decisions of the Irrigation Commission, is delivered in whole or in part and is measured at the canals of the Irrigation Service system, and such tracts shall be determined by dividing the value of the said concessions in acre-feet per year, as the same may be or shall have been fixed by the Commissioner of the Interior, by the Irrigation Commission or by decision of the courts, by four, —that is to say, by the number of acre-feet per year established by the Public Irrigation Law as a normal rate for delivery per acre for the formation of the irrigation district; (4) parcels of land irrigated by water supplied because of acquired rights or concessions which have not been assigned, which said water, pursuant to the terms of the contracts entered into with the Commissioner of the Interior or under decisions of the Irrigation Commission, is taken and measured in the rivers at the points of intake indicated in the said concessions; and such tracts shall be determined by dividing the value of the said concessions in acre-feet per year, as the same may be or as shall have been fixed by the Commissioner of the Interior, by the Irrigation Commission or by decision of the courts in cases of appeal, by five."

Whether this complicated and confusing method of computation even approximately arrived at the fair apportionment of the actual operation costs of the system to be borne by those persons heretofore untaxed is a question that it is unnecessary to decide in this action.

March 4, 1927, where the taxpayer had obtained an injunction restraining the assessment or collection of a tax, the enforcement of any such tax by the authorities at Puerto Rico should be by a suit at law rather than any form of summary proceeding. As a result of the passage of this Act, the plaintiff instituted this action to collect taxes under Act 49.

The suit was originally brought in the insular District Court of San Juan. It was removed to the United States District Court for Puerto Rico on the ground of diversity of citizenship. The court denied a motion to remand and entered a decree for the defendant on the grounds that the assessments sued for were levied in violation of Section 2 of the Organic Act of Puerto Rico, 39 Stat. 951, 48 U.S.C.A. § 737, forbidding the enactment of any law impairing the obligation of contract, and that Act 49 was void as an undue delegation to administrative officers of the legislative function of levying taxes.

On appeal this court affirmed the decision of the District Court in People of Porto Rico v. Havemeyer, 1 Cir., 1932, 60 F.2d 10. The Supreme Court, People of Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903, granted certiorari, reversed the judgment of this court on the ground that the federal court had acted without jurisdiction as the defendant was a juridical entity under Puerto Rican law, domiciled in Puerto Rico, and its domicile rather than that of its members determines citizenship for purposes of federal jurisdiction. It remanded the cause to the insular District Court from which it had been removed. The case having been remanded, the plaintiff thereupon filed an amended complaint on June 8, 1934, to claim additional taxes accrued since the filing of the suit. At the conclusion of the evidence the insular District Court followed the opinion in People of Porto Rico v. Havemeyer, supra, and dismissed the complaint, though it recognized that the decision could have no substantive effect, having been reversed on jurisdictional grounds.

The Supreme Court of Puerto Rico reversed the decision of the insular District Court and rendered judgment ordering the defendant to pay the tax sued for with interest. The Supreme Court felt that the reasoning of this court in People of Porto Rico v. Havemeyer, supra, was not binding upon it and reached an opposite result. It is from that judgment that the defendant has appealed, thus bringing the case before this court for the second time.

■ We have been unable to find any similar case where a United States Circuit Court of Appeals passed on the merits of a case appealed from a federal district court, was reversed by the Supreme Court of the United States on jurisdictional grounds and the case remanded to the courts of another government, and later was called upon to decide the same question again between the same parties on substantially the same record on appeal from an entirely different judicial system. This peculiar situation arises because this court is made the court of appeal in certain circumstances for both the United States District Court for Puerto Rico and the territorial Supreme Court of Puerto Rico, 38 Stat. 803, 28 U.S.C.A. § 225. We have undoubted jurisdiction of this appeal since the defendant contends that the taxing law in question, Act 49, violates a statute of the United States, i. e., the Organic Act of Puerto Rico.

■ The defendant, Russell & Co., argues that the opinion of this court on the former appeal, though reversed for lack of jurisdiction, is controlling on this court as to all matters therein decided on which the Supreme Court of the United States did not express an opinion. The argument is that the doctrines of res judicata, stare decisis, or the "law of the case" must bar any independent examination of the question presented. We can not agree. In our recent decision of White v. Higgins, 1 Cir., 1940, 116 F.2d 312, we expressed our agreement with the general doctrine that on a second appeal in the same case all questions adjudicated on the prior appeal are the law of the case and will not be reconsidered or readjudicated. Thompson v. Maxwell Land Grant Co., 1897, 168 U.S. 451, 456, 18 S.Ct. 121, 42 L.Ed. 539; Great Western Telegraph Co. v. Burnham, 1896, 162 U.S. 339, 343, 344, 16 S.Ct. 850, 40 L.Ed. 991. We have in no sense changed our position. But the present case is not one in which any of the questions were finally adjudicated. The Supreme Court of the United States decided that this court had no jurisdiction to pass upon the questions raised and nullified our earlier decision. In such a situation purported decisions made without power or authority to make them can not be considered as the law of the same case on a subsequent appeal through the proper jurisdictional channels. See Steinman v. Clinchfield Coal Corp., 1917, 121

Va. 611, 622, 623, 93 S.E. 684, 688; Elsom v. Tefft, 1928, 148 Wash. 195, 196, 268 P. 177; cf. In re Baird's Estate, 1924, 193 Cal. 225, 236, 223 P. 974, 978.

Clearly, the Supreme Court of Puerto Rico was not bound by our former decision rendered without jurisdiction any more than would be a state Supreme Court. If it were so concluded from an independent adjudication of the merits of the controversy and if we should likewise be prevented from re-examining the questions presented, the reversal, remand and retrial of the suit would have been useless indeed, particularly since in the normal course of events the case was almost certain to be appealed again to this court. It is our opinion that if the court on the first appeal did not have jurisdiction to adjudicate the question, its judgment is not the law of the case on a subsequent appeal. Nor can the first appeal be res judicata or stare decisis, since nothing was finally adjudicated. The most that can be said for it is that it may or may not be considered persuasive reasoning for independently reaching the same result. The citation of the opinion, following its reversal, in Rich Hill Coal Co. et al. v. Bashore, 1939, 334 Pa. 449, 498, 7 A.2d 302, 325, is simply indicative of such persuasion. The insular District Court, the Supreme Court of Puerto Rico were, and this court also is, perfectly free to pass upon the questions here presented regardless of our former decision in People of Porto Rico v. Havemeyer, supra.

The Supreme Court of Puerto Rico held that Act 49 did not impair the obligation of contracts on the ground that this Act merely imposed a valid tax on the owners of water rights. We do not agree. It seems clear to us that the Act impairs the obligation of contract by charging the defendant a part of the cost of maintaining and operating the irrigation system of which it was not a part and for the delivery of water to which it was entitled by contract in lieu of water which it had heretofore taken without charge.

The validity of these contracts between the plaintiff and the defendant has long since been upheld in this court. See Veitia v. Fortuna Estates, 1 Cir., 1917, 240 F. 256; People of Porto Rico v. Russell & Co., 1 Cir., 1920, 268 F. 723. By these cases, the plaintiff was restrained from diverting from the defendant the surplus waters which it had agreed by the contracts could be taken by the defendant until the plaintiff should undertake the utilization of such surplus waters. It was immediately following the last case enjoining the plaintiff from this diversion that Act 49 was passed attempting to exact money for the support of the system from those owners of water rights who had not surrendered them but had contractual rights to the delivery of equivalent amounts of water by the irrigation system.

Prior to these contracts, the defendant had the right to take certain amounts of water from the Jacaguas River at its intakes without charge. It constructed and maintained its own intakes. This right to take water was a property right of the defendant. The plaintiff could not impair or obstruct this right without paying just compensation. The Public Irrigation Law recognized this by providing for such condemnation and compensation or for the crediting of the value of surrendered water rights against the assessments for construction and operation of the irrigation system levied on those owners of water rights who had surrendered them and were included in the irrigation district. The defendant had not surrendered its water rights and was not included in the irrigation district.

Since the defendant did not wish to relinquish its water rights, and apparently the plaintiff did not wish to condemn and pay for them, they entered into a contract to provide the defendant with the equivalent of its water rights. A lesser amount than what the defendant could take under its water rights was provided for because of the certainty of its delivery. The plaintiff insists that the defendant must pay for the benefits received by it because of the irrigation system. However, by contract the defendant got no more than the equivalent of its former rights. Ostensibly it got no benefit and suffered no harm; what it gained in certainty it lost in quantity.

Under its water rights, the defendant got its water free at its intakes. Under the contract, the plaintiff agreed to deliver an amount of water equivalent in value at the defendant's intakes in consideration of the right acquired by it to carry out the irrigation scheme and interfere with the defendant's rights. There is nothing in the contract providing that the defendant pay either for the equivalent in value of water which it had heretofore received free or for delivery of such water. The opposite is implicit in the entire contract. The defendant continued to maintain its own intakes and

reservoirs. Only when the defendant requests delivery at other than the contract intakes is there any provision for payment of any costs, and then the defendant is only to pay the "extra" cost of such delivery. It is also significant that the contract expressly provided that the defendant was to have free use of any waters which seeped through from the dam over and above the specific amount contracted for.

The plaintiff frankly admits that the tax in question is "very clearly simply a special tax to cover only appellant's fair share of the actual current maintenance costs of the irrigation works". That is the entire difficulty. The appellant has no "fair share" of the maintenance cost of the irrigation works to bear. It was entitled to free water before the passage of the Acts in question. The so-called tax clearly imposes a burden upon the defendant's present right to receive the water agreed to be delivered to it by the plaintiff as a substitute for its old free water rights. We agree with the former opinion of this court in People of Porto Rico v. Havemeyer, supra, that this Act undertakes to make the contractual right to receive the water agreed upon conditional on the payment of the taxes in question, and impairs the contractual obligation to furnish the water with no conditions in consideration of the right to build the irrigation system.

The plaintiff had an opportunity to condemn the rights and pay their full value. If after such condemnation, the land was furnished water from the system the defendant would be in the position of one who had never possessed water rights and would be subject to assessments for construction, maintenance and operation. So also if the defendant had relinquished its rights in consideration of inclusion in the district and a credit of the value of the surrendered rights against such assessments. The plaintiff made no such arrangements for payment of value. In effect, it suspended the defendant's rights without compensation and now desires to force it to pay the cost of providing it with water as though it held no rights, in spite of the contractual obligation to provide their equivalent. In such a situation the words of the Supreme Court of the United States in Woodruff v. Trapnall, 1850, 10 How. 190, 207, 13 L.Ed. 383, seem particularly applicable:

"A State can no more impair, by legislation, the obligation of its own contracts, than it can impair the obligation of the contracts of individuals. We naturally look to the action of a sovereign State, to be characterized by a more scrupulous regard to justice, and a higher morality, than belong to the ordinary transactions of individuals."

See also Antoni v. Greenhow, 1882, 107 U.S. 769, 795, 2 S.Ct. 91, 27 L.Ed. 468; Hall v. Wisconsin, 1880, 103 U.S. 5, 26 L. Ed. 302; Green v. Biddle, 1823, 8 Wheat 1, 92, 5 L.Ed. 547.

The plaintiff insists, however, that the tax is valid since there is no showing that the water rights or the contractual equivalent thereof were to be permanently tax free. We need not here decide whether a general property tax or other tax might validly be imposed on the defendant's right to take water from the Jacaguas River for irrigation purposes. Suffice it to say that this is not such a tax. This is a special assessment to cover the actual current maintenance costs of the irrigation works. It is based upon a benefit which is not conferred and is in violation of a contract to provide an equivalent of free water. It is well settled that under the guise of levying taxes, a state may not impair the obligation of contracts. Murray v. Charleston, 1877, 96 U.S. 432, 24 L.Ed. 760.

The case of New York ex rel. Metropolitan Street Ry. v. State Board of Tax Com'rs of New York, 1905, 199 U.S. 1, 25 S.Ct. 705, 50 L.Ed. 65, 4 Ann.Cas. 381, dwelt on at length by the plaintiff is not in point. In that case the question was whether, on top of a special annual assessment provided for by contract, the State could impose a general franchise tax. In the instant case, the problem is whether the government can impose a special assessment not provided for by contract, even assuming that a general tax could be imposed. The questions are quite different.

It is our opinion that Act 49 impairs the obligation of these contracts entered into for the suspension of water rights in return for the agreement to deliver an equivalent amount of water to the defendant. In view of this determination we find it unnecessary to pass upon the question of whether there was an undue delegation of legislative power to the Commissioner of the Interior in the computation of the tax.

The judgment of the Supreme Court of Puerto Rico is reversed, and the case is remanded to that court with direction to order the complaint dismissed; the appellant recovers costs of appeal.