## DE J. CORDERO v. PRENSA INSULAR DE PUERTO RICO, Inc., et al.

No. 4282.

Circuit Court of Appeals.

First Circuit.

July 23, 1948.

Samuel D. Slade, Atty., Dept. of Justice, of Washington, D. C. (Herbert A. Bergson, Acting Asst. Atty. Gen., and Alvin O. West, Atty., Mastin G. White, Sol., Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, and Shirley Ecker Boskey, Atty., Dept. of the Interior, all of Washington, D. C., on the brief), for appellant.

Guillermo Cintron Ayuso, of San Juan, Puerto Rico, for appellees.

Elisha Hanson and Letitia Armistead, of American Newspaper Publishers Assn., both of Washington, D. C., amicus curiae.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico, entered March 26, 1947, directing the issuance of a peremptory writ of mandamus requiring appellant Rafael de J. Cordero, the Auditor of Puerto Rico, to permit appellees to inspect and take notes of certain documents relating to transactions between the Government of Puerto Rico and the firms Concrete Industries, Inc., and Caguas Development Company. By way of defense, it was contended, inter alia, that certain provisions of the Organic Act relating to the powers and duties of the Auditor deprived the court below of jurisdiction in the premises, and that in so far as the relief sought purports to be authorized by provisions of insular statutes later to be mentioned, those local enactments must be held to be invalid under the Organic Act. The Supreme

Court of Puerto Rico, upon full consideration, rejected these contentions.

 Since the court below ruled adversely to the Auditor's claim of immunity, founded on the Organic Act, a claim not frivolous and colorable, but substantial in character, it is settled that this court has jurisdiction of the pending appeal pursuant to 28 U.S.C.A. § 225, regardless of the amount in controversy. Municipality of Rio Piedras v. Serra, Garabis & Co., Inc., 1 Cir., 1933, 65 F.2d 691; Russell & Co. v. People of Puerto Rico, 1 Cir., 1941, 118 F.2d 225, 229, affirmed 1942, 315 U.S. 610, 62 S.Ct. 784, 86 L.Ed. 1062; Fitzsimmons v. Leon, 1 Cir., 1944, 141 F.2d 886, 888; Gallardo v. Gonzalez, 1 Cir., 1944, 143 F.2d 947, 949; see Arroyo v. Puerto Rico Transportation Co., 1 Cir., 1947, 164 F.2d 748, 750. Our jurisdiction extends to the entire case, including questions of local law. Mercado Riera v. Mercado Riera, 1 Cir., 1945, 152 F.2d 86, 92.

Appellee Prensa Insular de Puerto Rico, Inc., owns and publishes El Imparcial, a daily newspaper of general circulation throughout Puerto Rico. Appellee Antonio Ayuso Valdivieso is the president of the corporation, in control of the editorial and news reporting policy of the newspaper. On January 31, 1947, the paper commenced a campaign or crusade against "corruption" in Puerto Rico, charging that the Insular Government had acquired by condemnation proceeding, at an exorbitant price, an estate owned by Caguas Development Company, a firm in which the Commissioner of the Interior was a partner, and that the condemnation proceeding was resorted to for the purpose of evading §§ 202, 203 and 205 of the Political Code of Puerto Rico prohibiting public officers from being interested in business transactions with the Insular Government. Following publication of this article, a reporter of El Imparcial called at the office of the Auditor on February 3 or 4, seeking further information as to the condemnation proceeding and also as to transactions between the government and Concrete Industries, Inc.; but he was refused information by the Auditor.

Appellant, after a search of documents in his office, learned that there had been transactions between Concrete Industries, Inc., and the War Emergency Program. He further learned that the Commissioner of the Interior, and his brother, a senator, were directors, officers and stockholders of that corporation. He instituted an investigation of his records to determine the number of government transactions with Concrete Industries, Inc., and with Caguas Development Company, and immediately stopped payment on a pending settlement warrant for the former.

On February 4, 1947, the Auditor received a letter from appellee Ayuso in the latter's "capacity as taxpayer of Puerto Rico and as Managing Editor of 'El Imparcial'", requesting information "for purposes of publication relating to a campaign of public interest" whether Concrete Industries, Inc., and Caguas Development Company had sold construction materials to the Puerto Rican Government or its agencies and municipalities, and if so to furnish quantities, dates, and amounts.

Not having received an answer from the Auditor, Ayuso, accompanied by a notary public, went to the Auditor's office on February 6 and there served on him a notarial "Act of Demand" calling upon the Auditor to "show to the appearing party, Mr. Antonio Ayuso Valdivieso, and allow him to take notes and data on, all the warrants and vouchers of payment together with the invoices, subsidiary documents and other papers pertaining to the transactions effected between the Government of Puerto Rico, its Municipalities, Agencies, Dependencies, and Authorities and the firms 'Concrete Industries, Inc.' and 'Caguas Development Co.' during the period from April seventeenth, nineteen hundred and forty-five, to February sixth of the present year."

In response to this Act of Demand, the Auditor stated to the notary that "he would not show any of the documents under his custody to Mr. Ayuso nor to any other person not directly interested therein, unless by order of a Court."

The investigation which the Auditor had ordered was completed on February 15,

1947. All the vouchers pertaining to Concrete Industries, Inc., were placed in the hands of the District Attorney, and the matter was referred to the Department of Justice for appropriate action. No vouchers were found relating to any transaction with Caguas Development Company.

Meanwhile, on February 11, 1947, appellee had filed in the Supreme Court of Puerto Rico a petition for a writ of mandamus commanding the Auditor to permit the inspection of the records referred to above. By order of the court, an alternative writ was issued, directing the Auditor to allow the inspection or to show cause why he had not done so. The Auditor filed his answer, setting up various special defenses, and the cause came on for hearing before the Supreme Court of Puerto Rico on February 24, 1947.

At the hearing, the facts as above summarized appeared in evidence. We gather from the Auditor's testimony that he has never issued any formal regulation governing the conditions under which documents in his custody may be inspected; but he stated that it has been "the practice of the Auditor's Office to furnish a party with a certified copy of any desired document, provided a party interested in the account is involved." He added, however, that this was "the only case in which an inspection has been demanded. I do not know of any other case." We shall assume in appellant's favor, though the point is doubtful, to say the least, that the evidence sufficiently established an administrative practice which might be deemed the legal equivalent of a formal regulation by the Auditor precluding inspection by appellees under the circumstances stated. Cf. Haas v. Henkel, 1910, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; United States v. Birdsall, 1914, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930; Buscaglia v. Liggett & Myers Tobacco Co., Inc., 1 Cir., 1945, 149 F.2d 493, 495.

On March 26, 1947, the Supreme Court of Puerto Rico entered a judgment ordering the issuance of a peremptory writ of mandamus commanding the Auditor to permit Antonio Ayuso Valdivieso or any other officer or agent of Prensa Insular de Puerto Rico, Inc., to inspect and take notes of the documents in question. This is the judgment now before us for review.

The court below relied upon §§ 409 and 410 of the Code of Civil Procedure of Puerto Rico (1933 Ed.) as imposing upon the Auditor, by fair implication, a ministerial duty to permit inspection of documents in his custody as demanded by appellees; the opinion, however, recognized that in the performance of this duty the Auditor "has authority to regulate the issuance of copies of documents and inspection thereof in a reasonable manner in order that these activities shall not prejudice the daily operations and well-being of his office." The Code provisions referred to read as follows:

"Section 409—Every citizen has a right to inspect and take a copy of any public document of Puerto Rico, execpt as otherwise expressly provided by law.

"Section 410—Every public officer having the custody of a public document is bound to give him, on demand, a certified copy of it on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing."[1]

■ The interpretation which the court below put upon these sections of the Code accords with the interpretation of a similar provision of law given by the Supreme Court of Vermont in Clement v. Graham, 1906, 78 Vt. 290, 315, 316, 63 A.146, 153, Ann.Cas.1913E, 1208. We cannot say that this interpretation of the local Code provisions by the Supreme Court of Puerto Rico is "patently erroneous" or "inescapably wrong", and hence we accept such interpretation, under a rule now thoroughly familiar. De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

■ A further question of local law was raised as to the standing of appellees under § 651 of the Code of Civil Procedure

---

[1] First enacted into law as §§ 47 and 48 of An Act to regulate the introduction of evidence in civil proceedings, approved March 9, 1905, Laws P.R.1905, p. 79.

to invoke the remedy of mandamus to compel the performance by the Auditor of his legal duty to permit inspection of documents. Section 651 of the Code, which derives from § 3 of the Mandamus Act of March 12, 1903 (Laws P.R.1903, p. 114), provides that the writ of mandamus "may be issued on the information of the party beneficially interested." From this it follows, as recognized in the opinion below, that as a condition for the issuance of a writ of mandamus the petitioner must have "a special interest different from the general interest possessed by any citizen in the right claimed"; and that "a person who because of mere curiosity desires to inspect a public document cannot resort to mandamus." In Lutz v. Post, 1908, 14 P. R.R. 830, 841, the court had held that newspaper editors as a class had no special interest in obtaining a copy of a public document beyond that possessed by citizens generally and hence, without more, did not qualify as a "party beneficially interested" within the meaning of the Mandamus Act, so as to be entitled to maintain a proceeding for a writ of mandamus. But in the case at bar the court in effect overruled Lutz v. Post, stating that the right of the press to inspect public documents had progressed considerably since 1908 when the Lutz case was decided and that probably "the Justices who took part in its decision would not decide it now, insofar as this point is concerned, in the manner they did more than thirty eight years ago." In this connection the court relied particularly upon Nowack v. Fuller, 1928, 243 Mich. 200, 219 N.W. 749, 751, 60 A.L.R. 1351, in which it was held that the editor of a newspaper, wishing to inspect public records in the Auditor General's office to determine if public money was being properly expended, in order to publish such matters for the information of the public, had a sufficient "special interest, not possessed by the citizens generally", entitling him to the aid of a court by a writ of mandamus. To similar effect see Holcombe v. State, 1941, 240 Ala. 590, 200 So. 739. We cannot say that a decision of the Supreme Court of Puerto Rico on a matter of local law is "patently erroneous" merely because it overrules a prior decision. The Supreme Court of

Puerto Rico is free to do that, the same as other courts. Its ruling in the case at bar as to the standing of appellees to apply for a writ of mandamus, supported as it is by precedents from continental United States, certainly cannot be deemed so unreasonable a construction of § 651 of the Code of Civil Procedure as to warrant this court in adopting a contrary interpretation of the local enactment.

But appellant argues that §§ 409, 410 and 651 of the Code of Civil Procedure, as here interpreted and applied by the court below, are invalid because in conflict with provisions of the Organic Act.

Before referring to the specific sections of the Organic Act relied upon, certain preliminary observations are in order. Under § 32 of the Foraker Act (31 Stat. 83) and § 37 of the present Organic Act (39 Stat. 964, 48 U.S.C.A. § 821), the powers delegated to the legislature of Puerto Rico "shall extend to all matters of a legislative character not locally inapplicable". In the oft-quoted language of Puerto Rico v. Shell Co., Ltd., 1937, 302 U.S. 253, 261, 58 S.Ct. 167, 171, 82 L.Ed. 235, this grant of legislative power in respect of local matters "is as broad and comprehensive as language could make it." The mere fact that Congress, in the Organic Act, has legislated upon the subject matter of the insular Auditor's custody of records, does not preclude the enactment of consistent legislation by the Puerto Rican legislature dealing with the same subject matter. In other words, Congress has expressed no intent in the Organic Act, nor in any other federal act, "to limit the exercise of the power of local legislation to those subjects in respect of which there is an absence of explicit legislation by Congress". Puerto Rico v. Shell Co., Ltd., supra, 302 U.S. at 263, 58 S.Ct. 171, 172, 82 L.Ed. 335. Though Congress in the Organic Act has conferred certain powers and duties upon the insular Auditor, the legislature of Puerto Rico may yet impose additional duties upon this official, with reference to making records in his custody available for public inspection, so long as such additional duties are not in conflict with some congressional mandate. Cf.

Municipality of Guayanilla v. Public Service Commission, 1 Cir., 1940, 116 F.2d 15, 16. Such conflict is not to be presumed, but must be clearly and affirmatively evident. See Wright v. Ynchausti and Co., 1926, 272 U.S. 640, 650, 47 S.Ct. 229, 71 L.Ed. 454. This is particularly true with reference to the subject matter of the present litigation, for it is difficult to imagine anything of more exclusively local concern than the matter of the extent to which public documents in the custody of the Auditor are to be available for public inspection.

When the provisions of §§ 409 and 410 of the Code of Civil Procedure were first enacted, in 1905, the functions of the Auditor were set forth in the then applicable Organic Act, the Foraker Act of 1900 (31 Stat. 82), as follows: "* * * the auditor shall keep full and accurate accounts, showing all receipts and disbursements, and perform such other duties as may be prescribed by law, and make, through the governor, such reports to the Secretary of the Treasury of the United States as he may require, which shall annually be transmitted to Congress." At this time there was certainly no conflict between the Organic Act and the local enactment making it the duty of the Auditor to permit inspection of his records by properly qualified citizens. The Jones Act of 1917 (39 Stat. 968) provided, in § 57, 48 U.S.C. A. § 735, that the laws of Puerto Rico "now in force shall continue in force and effect, except as altered, amended, or modified herein, until altered, amended, or repealed by the legislative authority herein provided for Puerto Rico or by Act of Congress of the United States". The Jones Act, which generally was in the direction of giving greater, rather than less, autonomy to the local government, set forth more fully the powers and duties of the insular Auditor. Relevant portions of this, the current Organic Act, are set forth in the footnote.[2]

 Sections 409 and 410 of the Code of Civil Procedure, as here interpreted and applied, do not conflict with the provisions of § 20 of the Organic Act mak-

[2] "Sec. 20 [as amended, 44 Stat. 1419, 48 U.S.C.A. § 786 et seq.]. That there shall be appointed by the President an auditor, at an annual salary of $6,000, for a term of four years and until his successor is appointed and qualified. * * *

"The auditor shall examine, adjust, decide, audit, and settle all accounts and claims pertaining to the revenues and receipts from whatever source of the government of Porto Rico and of the municipal funds derived from bond issues; and he shall examine, audit, and settle, in accordance with law and administrative regulations, all expenditures of funds and property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof. He shall perform a like duty with respect to all government branches.

"The auditor shall keep the general accounts of the government, be the custodian of and preserve the vouchers pertaining thereto. The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. * * *

"The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. The auditor shall, except as hereinafter provided, have like authority as that conferred by the law upon the Comptroller General of the United States, and is authorized to communicate directly with any person having claims before him for settlement, or with any department, officer, or person having official relation with his office.

"The auditor, with the approval of the governor, shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches: * * *

"The office of the auditor shall be under the general supervision of the governor."

"Sec. 21 [39 Stat. 958, 48 U.S.C.A. § 789]. That any person aggrieved by the action or decision of the auditor in the settlement of his account or claim may, within one year, take an appeal in writing to the governor, which appeal shall specifically set forth the particular action of the auditor to which exception is taken, with the reason and authorities relied on for reversing such decision. The decision of the governor in such case shall be final, subject to such right of action as may be otherwise provided by law."

ing the Auditor the "custodian" of the vouchers pertaining to the general acts of the Insular Government, and giving the Auditor "exclusive" jurisdiction over all such vouchers and records. An insular enactment which purported to confer upon some other official the custody of these documents would be in conflict with the Organic Act. But the Auditor's exclusive custody is not displaced by an enactment which requires the Auditor to make the documents available for reasonable public inspection, the documents remaining all the while in the Auditor's custody. We do not think that § 20 of the Organic Act was intended to confer upon the Auditor exclusive power to decide for himself who would be permitted to see the public records committed to his custody, in disregard of a reasonable provision of local law.

Great stress is put by appellant upon the provision of § 20 that the Auditor shall "have like authority as that conferred by the law upon the Comptroller General of the United States". The Comptroller General has authority to make rules and regulations, derived from two sources. Section 311(f) of the Budget and Accounting Act, 1921 (42 Stat. 25, 31 U.S.C.A. § 52(f)), provides that the Comptroller General "shall make such rules and regulations as may be necessary for carrying on the work of the General Accounting Office". Section 306 of the same act (42 Stat. 24, 31 U.S.C.A. § 46) provides that all laws "relating generally to the administration of the departments and establishments shall, so far as applicable, govern the General Accounting Office" which, by reference, incorporates § 161 of the Revised Statutes (5 U.S.C.A. § 22) providing that the head of each department "is authorized to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it." By force of § 20 of the Organic Act, the Auditor of Puerto Rico has a comparable power to promulgate rules and regulations dealing with the conduct of his office, including

regulations concerning the custody of records and the availability of the same for public inspection. But the exercise of such regulatory power by the Auditor, as well as by the Comptroller General, would have to be in subordination to any valid enactment, then existing, or passed in the future, requiring the records to be made available for public inspection. For the reasons above indicated, we regard §§ 409 and 410 of the Code of Civil Procedure as such a valid enactment.

Other points raised by appellant, all of which we have considered, do not call for separate comment or are sufficiently dealt with in the opinion below.

The judgment of the Supreme Court of Puerto Rico is affirmed.