ROMERO v. PEOPLE OF PUERTO RICO.

No. 4484.

United States Court of Appeals, First Circuit.

June 16, 1950.

865

F. Fernandez Cuyar, San Juan, Puerto Rico, for appellant.

Marvin E. Frankel, Attorney, Department of Justice, Washington, D. C. (H. G. Morison, Assistant Attorney General, Samuel D. Slade and David B. Bliss, Attorneys, Department of Justice, Mastin G. White, Solicitor, Department of the Interior, Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, and Shirley Boskey, Attorney, Department of the Interior, all of Washington, D. C., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and CLARK, by special assignment, and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a judgment by the Supreme Court of Puerto Rico, rendered January 17, 1950, affirming a judgment of the District Court for the Judicial District of San Juan on March 2, 1949, finding appellant Aleja Romero guilty of the unlawful possession of *bolita* materials in violation of § 4 of Act No. 220, Laws P.R. 1948, p. 738, known as the Bolita Act.

Section 4 of the Bolita Act is one section of a number of related provisions dealing comprehensively with a long-recognized

evil in Puerto Rico. The Act superseded a somewhat ineffective earlier law on the same subject matter, Act No. 25, approved July 17, 1935, Laws P.R. 1935, Special Session, p. 152. In People of Puerto Rico v. Plácida Mantilla Rodríguez, —— P.R.R. ——, decided by the Supreme Court of Puerto Rico March 17, 1950, that court said: "In conclusion, we take judicial notice that the operation of *bolita* games in Puerto Rico is a serious evil. The Legislature has chosen to legalize some forms of gambling. People v. Escambrón Beach Club, 63 P.R.R. 731, 748–49; Act No. 221, Laws Puerto Rico, 1948. But it has recognized the dangers and corrupting influence of the playing of *bolita*, a game in which racketeers prey on our poorer classes. Act No. 220 represents a laudable attempt to deal effectively with these illicit activities." The section of the Bolita Act now directly in question (§ 4) reads as follows: "Section 4.—Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipul,* combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense and shall be immediately arrested and the case shall be brought without delay before the district attorney of the judicial district having jurisdiction on the matter, who shall file the proper information. Such person shall, upon conviction, be punished by imprisonment in jail for a term of not less than six (6) months or more than two (2) years; and for the second and subsequent violations, shall be punished by imprisonment in the Penitentiary for not less than one (1) year nor more than ten (10) years. *Provided,* That all trials for violations of the provisions of this Act shall be heard in the district courts by the court without a jury, exclusively, and the judges of the district courts of Puerto Rico are hereby directed to give preference to the hearing of all cases involving a violation of any of the provisions of this Act."

Prosecution of Aleja Romero was instituted by the filing of a sworn information on September 7, 1948, charging that on or about August 8, 1948, the accused "unlawfully, wilfully and criminally, had in her possession and in her house, * * * 122 lists of paper in different colors with numbers of three figures, dash and one unit to the right; an adding machine, Series No. M-229408; paper bands for wrapping money; a pack of rubber bands; a notebook with names and numbers; a list of numbers; the sum of $2,548.15, in American bills and currency and an account book, materials and implements, which may be used and were being used in the operation of the prohibited games of the Bolita, Bolipool, combinations in connection with the pools, or *bancas* of the racetracks of Puerto Rico and clandestine lotteries." Defendant was arraigned in February, 1949, pleaded not guilty, and was tried by the district court without a jury. The only evidence against her on the issue of unlawful possession was as follows: The police sergeant who conducted a search of defendant's home on August 8, 1948, under a search warrant, testified that he found there the various articles specified in the information. Specifically he testified that the numbers contained in the 122 lists "were of three figures followed by a dash and one unit to the right, which represents the amount of money bet on the number appearing on the left." These paper lists, he explained, contain "numbers of the bolita game." "The bolita is a clandestine game which is played by drawing out three numbered balls from a *candungo* (shake bottle) containing ten balls numbered from one to nine, and the three balls drawn out form one number of three figures which is the prized number in that lottery. It may also be played in combination with the last three figures of the grand prize of the official lottery drawn in Puerto Rico or of the National Lottery of Santo Domingo." This testimony bears out the description of the game as contained in the opinion of the Supreme Court of Puerto

Rico in People of Puerto Rico v. Plácida Mantilla Rodríguez, supra: "Indeed, we have had so many cases in which this has been established that we can almost take judicial notice that in Puerto Rico *bolita* is generally played by betting on the numbers from 000 to 999, keyed to the last three numbers of the lotteries of Puerto Rico or Santo Domingo, and the local racetrack pool, and that *bolita* lists consist of a series of three figure numbers, followed by a dash and the amount bet on the respective numbers."

The trial court upheld the validity of the search and seizure under the warrant and admitted in evidence the articles seized. Its ruling on this point was as follows: "The court admits the evidence presented because it is of the opinion that the search warrant, as it has decided, was properly issued and that all the materials, money, paper for binding money, adding machine, books and lists of numbers and everything that was presented, are materials that may be used in the game of *bolita* or boli-pool and therefore the person who has them in its possession commits the offense punished by Act No. 220 of 1948."

The accused did not testify, and no evidence was offered on her behalf to explain her possession of the seized articles or to show that such possession was "accidental or fortuitous". (See footnote 12 of People of Puerto Rico v. Plácida Mantilla Rodríguez, supra.)

When the evidence was all in, as above, the defense moved for a judgment of acquittal, which the court refused to grant on the ground that it is "a public offense to hold or possess these materials for any purpose"; that the accused is being prosecuted "for the only crime which *prima facie* she has committed, which is that of possession"; that it "is an easy case * * * a case of mere possession." The defendant was found guilty and sentenced to six months in jail.

On appeal to the Supreme Court of Puerto Rico, that court, in a brief per curiam opinion, affirmed the judgment. The only federal question dealt with in the opinion was the validity of the search and seizure, which the court upheld. The other point discussed briefly was the sufficiency of the evidence to sustain the conviction. In a motion for reconsideration, filed January 26, 1950, appellant sought to present to the Supreme Court of Puerto Rico two federal questions, which we shall comment upon at a later point. The motion for reconsideration was denied without opinion, and an appeal was thereupon taken to this court.

Appellee urges that this appeal should be dismissed for lack of jurisdiction, and we have concluded that the point is well taken.

■ In civil cases coming to us on appeal from final decisions of the Supreme Court of Puerto Rico, and involving only questions of local law, including the interpretation of insular statutes, we have appellate jurisdiction (1) "in all habeas corpus proceedings" and (2) "where the value in controversy exceeds $5,000, exclusive of interest and costs." 28 U.S.C.A. §§ 1293, 1294(6). This is true, although in the exercise of that jurisdiction we may not reverse the Supreme Court of Puerto Rico on a point of local law, unless the decision of that court in such regard is "inescapably wrong" or "patently erroneous". Bonet v. Texas Co., 1940, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401; De Castro v. Board of Commissioners of San Juan, 1 Cir., 1943, 136 F.2d 419, 425–26, affirmed on certiorari 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

■ But the present is a criminal case, involving a conviction for violation of an insular criminal statute. In such a case we have appellate jurisdiction only if it involves "the Constitution, laws or treaties of the United States or any authority exercised thereunder"—or what may be called, in short, a federal question. The federal question sought to be presented must be substantial, not merely frivolous or colorable. Succession of Tristani v. Colon, 1 Cir., 1934, 71 F.2d 374. See also Barcelo v. Saldana, 1 Cir., 1931, 54 F.2d 852, 856; De J. Cordero v. Prensa Insular de Puerto Rico, Inc., 1 Cir., 1948, 169 F.2d 229, 231; Fukunaga v. Territory of Hawaii, 9 Cir., 1929, 33 F.2d 396, 397. Furthermore, the federal question must have been raised be-

low; and even then, we do not have appellate jurisdiction if the Supreme Court of Puerto Rico disposed of the case wholly on grounds of local law, subject to possible qualifications which we need not now set forth. In Ramos v. Leahy, 1 Cir., 1940, 111 F.2d 955, 956, we dismissed an appeal from the Supreme Court of Puerto Rico because "it does not appear that any properly presented federal question was raised below or considered by the court in rendering its opinion and judgment. Martinez v. Sancho, 1 Cir., 108 F.2d 960. It is not enough that a federal question be 'lurking in the record'." To aid us in keeping within our proper jurisdiction on appeals from the Supreme Court of Puerto Rico, our Rule 39 requires appellants to file a so-called "statement on appeal". In Rule 39(a) it is provided: "Where the jurisdiction of this court is asserted to rest upon the existence of a substantial federal question, the statement on appeal shall (1) include a full statement of the grounds upon which it is contended that the questions involved are substantial; (2) specify the stage in the proceedings in the court of first instance, and in the Supreme Court of Puerto Rico, at which, and the manner in which, the federal questions sought to be reviewed were raised; and (3) the way in which they were passed upon by the court, with such pertinent quotations of specific portions of the record, or summary thereof, together with specific reference to the places in the record where the matter appears, as will support the assertion that the rulings of the court below were of such a nature as to bring the case within the jurisdiction of this court."

In the instant case we do not find that any federal question was properly presented in the trial court or indeed in any way suggested to that court. In the per curiam of the Supreme Court of Puerto Rico on appeal, the only federal question considered was a point of search and seizure; but that point has dropped out of the case because appellant has not asked us to review the ruling of the Supreme Court of Puerto Rico thereon. So far as appears, appellant did not originally raise any other federal question before the Supreme Court of Puerto Rico. As above stated, appellant did, in a motion for reconsideration, seek to raise two federal questions, but the motion for reconsideration was denied without opinion. We shall assume in appellant's favor, without deciding, that the raising of these two federal questions in the motion for reconsideration was not untimely. Compare McMillen v. Ferrum Mining Co., 1905, 197 U.S. 343, 347, 25 S.Ct. 553, 49 L.Ed. 784; Jett Bros. Distilling Co. v. City of Carrollton, 1920, 252 U.S. 1, 6–7, 40 S.Ct. 255, 64 L.Ed. 421; Wall v. Chesapeake & Ohio Ry. Co., 1921, 256 U.S. 125, 41 S.Ct. 402, 65 L.Ed. 856, and Radio Station WOW, Inc. v. Johnson, 1945, 326 U.S. 120, 128, 65 S.Ct. 1475, 89 L. Ed. 2092, with State of Missouri ex rel. Missouri Ins. Co. v. Gehner, 1930, 281 U.S. 313, 50 S.Ct. 326, 74 L.Ed. 870, and Brinkerhoff-Faris Trust & Savings Co. v. Hill, 1930, 281 U.S. 673, 677–678, 50 S.Ct. 451, 74 L.Ed. 1107.

In the motion for reconsideration, it was urged that § 4 of the Bolita Act is void for indefiniteness under the due process clause of the Organic Act in that it does not contain an ascertainable standard of illegal conduct. This claim is predicated upon a strict literal reading of the words of § 4 as absolutely prohibiting the possession of any of the articles enumerated in the section "or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof". It is said that the legislature has thus rendered criminal the mere possession of any number of intrinsically innocent articles normally possessed and used for licit purposes merely because such articles "may be used" in some manner in connection with the prohibited games. Further, along the same line, the motion for reconsideration states: "In view of these circumstances, it seems clear that section 4 of the Act of 1948, violates the constitutional clause of due process of law in not defining with accuracy a public offense. It does not furnish an ascertainable standard of illegal conduct. The lists of numbers, the notebooks or the book, the bills, the adding machine or the bags of money seized in appellant's house are criminal objects simply because they may be conceivably used in the prohibited game.

An ordinary citizen who reads the Act, can not determine whether or not he commits a crime if he has in his house a notebook with numbers or an adding machine or bank bills. Thus, an innocent conduct may or may not, under that Act, become criminal." By way of contrast, appellant distinguished familiar statutes outlawing possession of adulterated milk or lottery tickets. "The adulterated milk and the clandestine lottery tickets, whether or not the possessor is aware, are always prohibited objects. Their prohibition has a reasonable relation to the police power of the State. But an object such as an adding machine, or a notebook with numbers, is not *per se* a prohibited object, nor can its prohibition by the Legislature be justified within any legislative power, since there is no relation between the police power of the State and the prohibition of objects normally of licit use."

■ The foregoing would present a serious constitutional problem if § 4 of the Bolita Act were to be read in the literal sense attributed to it by appellant. But the interpretation of the statute is a matter of local law, and the Supreme Court of Puerto Rico has determined that § 4 of the Act does not have the horrendous meaning and sweep asserted by appellant. A similar attack on the statute was made in People of Puerto Rico v. Gerardo De Jesús Vélez, —— P.R.R. ——, decided by the Supreme Court of Puerto Rico May 26, 1949. After pointing out that in construing a statute "the lawmaker's intent should be sought, not in an isolated phrase or in one of its sections but in the content of the whole statute keeping in mind the legislative purpose", the court said:

"If we adhere to the language of § 4, we get the impression that to merely carry, transport, use or possess any implement *which may be utilized* for the unlawful games of the *bolita, boli-pool,* etc., constitutes a violation of the Act. The intent of the Legislature in using the phrase 'which may be utilized' was not to prohibit the carrying, using, transporting or possessing any object susceptible of innocent use. Its intention was to prohibit the carrying, using, transporting or possessing

those objects when they have been utilized or are being utilized in connection with such games.

"In our opinion the statute is not vague or indefinite."

In People of Puerto Rico v. Plácida Mantilla Rodríguez, supra, decided March 17, 1950, the Supreme Court of Puerto Rico set forth at greater length its reasons for the narrower reading of the Act. It upheld the constitutionality of § 4 of the Bolita Act "as applied to possession of materials which are susceptible of innocent use on the ground that § 4 requires an affirmative showing that these materials were actually connected with a *bolita* game." Continuing, the court said: "But a different question is presented as a matter of evidence where as here the materials are not susceptible of innocent use but are of such a nature that they could be used for no purpose other than to operate a *bolita* game. Under the latter circumstances, a violation of § 4 is established by proof of possession of such materials; no additional evidence of connection with a *bolita* game is required precisely because the materials themselves establish the connection." The court here referred to Adams v. People of State of New York, 1904, 192 U.S. 585, 599, 24 S.Ct. 372, 48 L.Ed. 575, and United States v. Raynor, 1938, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413.

■ Under the construction of the Act which has been put upon it by the Supreme Court of Puerto Rico, appellant's conviction here could not have been sustained merely upon proof of possession of normally innocent articles, such as a notebook, a pack of rubber bands or an adding machine, without proof that such articles were actually being used in connection with the prohibited games. But the evidence also established appellant's possession of 122 lists of paper carrying the characteristic *bolita* numbers. Appellant made no effort to controvert the testimony that these lists contained "numbers of the bolita game." These lists were not articles normally possessed and used for legitimate purposes, but were "of such a nature that they could be used for no purpose other than to operate a *bolita* game." Under

the Act as it has been construed by the Supreme Court of Puerto Rico, appellant's conviction on the present record was sustainable merely upon proof, which was ample here, of her possession of these *bolita* lists.

 We do not understand appellant to assert that § 4 of the Bolita Act would be unconstitutional if it meant what the Supreme Court of Puerto Rico has held it to mean. Appellant does not raise a substantial federal question by attributing to the Act a literal meaning which has been rejected by the Supreme Court of Puerto Rico, and then asserting that the Act, read as appellant would have it, is void for indefiniteness under the due process clause. As above pointed out, this court does not have jurisdiction to review the local law question involved in the interpretation of the Act; therefore, for present purposes, we must take the Act as the Insular Supreme Court has construed it, just as if that construction had been embodied in the text of the statute.

 In her motion for reconsideration filed in the Supreme Court of Puerto Rico, appellant sought apparently to avoid the force of the above analysis by asserting that the language of the Act is crystal-clear in its absolute prohibition of the possession of any articles, however normally susceptible of innocent use, which "may be used" in connection with the *bolita* game; that the gloss which the Supreme Court of Puerto Rico has put upon the text of the statute, perhaps to save its constitutionality, constitutes an invasion of "the obvious functions of the Legislature, thereby infringing the Constitution and our Organic Act in one of its basic and most fundamental provisions, which is the separation of governmental powers." We regard this contention as wholly frivolous in thus seeking to raise a federal question of separation of powers on the premise that the Supreme Court of Puerto Rico has erroneously interpreted a local statute. Succession of Tristani v. Colon, 1 Cir., 1934, 71 F.2d 374.

The appeal is dismissed for lack of jurisdiction.