THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANGEL MONZÓN BRAÑA ET AL., Defendants and Appellants.

Nos. 14679–80. Argued December 1, 1950.—Decided January 29, 1951.

*Félix Ochoteco, Jr.* and *Ramón S. Pesquera Dávila* for appellants. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The appellants as well as Rosa Nieves and Saecce Costoso were separately accused of a violation of Act No. 220 of May 15, 1948. Rosa Nieves timely moved the lower court for the suppression and return of the evidence seized in her house by means of a search which she claimed was illegal. The evidence in question is common to the four cases. On September 30, 1949 the motion was heard and on that same day it was overruled. In the morning of the following November 4, Rosa Nieves was tried and sentenced to six months in jail. When the three remaining cases were called for trial on the afternoon of November 4, the defendants informed the court that they were in a position to attack the validity of the search executed in Rosa Nieves' house. They alleged that the illegality of the search benefited both the occupant of the house searched and those who were inside the house as guests. The court replied that the three defendants had no right to challenge the validity of the search because they were not occupants of the house searched, and cited *People* v. *Roldán,* 42 P.R.R. 918 and *People* v. *Acevedo,* 59 P.R.R. 113. The defendants took an exception and the trial began forthwith. The Prosecuting Attorney introduced the same evidence the suppression of which had been denied when Rosa Nieves' motion was dismissed, and on the basis thereof, Saecce Costoso, Bernardo Nieves, and Angel Monzón were found guilty and sentenced to seven, nine, and fourteen months in jail. Rosa Nieves, as well as the other three defendants, appealed to this Court, but since Rosa Nieves and Saecce Costoso abandoned theirs, the appeal was prosecuted

as to the other two defendants. As in the court *a quo* we have consolidated the appeals taken by these two defendants for the purposes of this opinion.

■■ In *People* v. *Roldán, supra*, and *People* v. *Acevedo, supra*, following the doctrine prevailing in federal courts, we held that the constitutional guarantee against unreasonable searches is a personal right of the possessor or occupant of the house searched and that since the motion for the suppression and return of evidence did not allege that the petitioners in said cases were in possession of the houses searched, there was no violation of any constitutional right which they might have and, consequently, they could not contest the validity of the search of the house of another nor request the suppression of the evidence thus obtained.

The petitioners herein admit that said rule prevails in the federal courts but that the doctrine has been recently reversed by the Supreme Court of the United States in *McDonald* v. *U. S.*, 335 U. S. 451 (1948). The appellants take that decision to mean that the occupant of the property searched as well as those who were inside the house as guests or visitors when the search was made, have the right to request the suppression of the evidence seized by means of an unlawful search.

We shall examine now the case of *McDonald* v. *U. S., supra*. It may be summarized as follows:

McDonald had rented a room in a private home in Washington, D. C. The police had kept him under surveillance for sometime suspecting that he was engaged in the operation of an illegal lottery. One day several policemen opened a window of the house and climbed into the landlady's room. One of them looked through the transom of the door of a room and saw there McDonald and another person named Washington. He also observed in the room a certain amount of tickets, money, and adding machines. They required McDonald to open the door of the room, seized

all the material and arrested the two men who, on the basis of this evidence, were later convicted of operating an illegal lottery. McDonald requested on time the suppression and return of the evidence obtained in the aforesaid manner, but the court denied his motion. Trial was had and both defendants were found guilty. The judgment was affirmed by the Court of Appeals for the Circuit of the District of Columbia, 166 Fed. 2d 957, and the Supreme Court of the United States granted certiorari to review said judgment and reversed same. The Supreme Court based its decision on the fact that since the police were not armed either with a warrant of arrest or a search warrant, the search of McDonald's room was illegal and, consequently, the evidence seized by virtue of said search was illegally obtained; that since McDonald had requested on time the return and suppression of that evidence, the trial court erred in not returning it to him and that since such evidence was the basis of the judgment, the error as to McDonald was prejudicial. And with respect to Washington, who was merely a guest of McDonald, it decided that assuming without deciding that the constitutional guarantee against unreasonable searches did not protect him, the judgment against him should also be reversed because had the evidence unlawfully seized been returned to McDonald, it would not have been available at the trial against Washington and there would not have been sufficient evidence to convict him and that, consequently, the error in not returning the evidence to McDonald also prejudiced Washington.

The Supreme Court of the United States did not decide, as appellants contend, that Washington had a right to request the return of the evidence unlawfully obtained. The Court adopted *arguendo* the theory most unfavorable to Washington, namely, that he was not protected by the constitutional guarantee, to conclude that even under that assumption Washington was prejudiced by the error committed

in not returning the evidence to McDonald. But this does not mean that the court had repudiated the doctrine prevailing in the federal courts, *U. S.* v. *Daniels*, 10 F.R.D. 225 (D.C.N.J., 1950) without even hinting that it was being revoked, above all when so recently, in *Goldstein* v. *U. S.*, 316 U. S. 114 (1942), it had applied said doctrine.[1]

Thus, the lower court did not err in deciding that appellants herein had no right to attack the validity of the search of Rosa Nieves' house.

■ The conclusion we have reached with respect to the first assignment of error relieves us from considering the second, for the latter refers to the insufficiency of the affidavit under which the search warrant was issued and as we have seen, the appellants had no right to attack the validity of the search.

■ The third assignment of error lacks merit for it challenges the constitutionality of Act No. 220 of May 15, 1948, the validity of which has been upheld, among others, in *People* v. *Mantilla*, 71 P.R.R. 35; *People* v. *De Jesús*, 70 P.R.R. 36; and *Romero* v. *People of Puerto Rico*, 182 F. 2d 864 (C. A. 1, 1950).

■■ Finally the appellants contend that the court *a quo* acted arbitrarily in the imposition of the sentences inasmuch as for the same crime it imposed different penalties on the defendants. The determination of the penalty rests in the sound discretion of the trial court provided it is within the limits fixed by law, and since no such abuse of discretion has been shown here, we shall not disturb the sentences imposed. *People* v. *Ramírez et al.*, 28 P.R.R. 292 and *Williams* v. *New York*, 337 U. S. 241 (1949).

The two judgments appealed from will be affirmed.

Mr. Justice Snyder did not participate herein.

---

[1] See the comment in 62 Harv. L. Rev. 1229 on the scope of the decision in the *McDonald* case.