**GALLARDO, Commissioner of Education, v. GONZALEZ.**

No. 3943.

Circuit Court of Appeals, First Circuit.

July 28, 1944.

David L. Kreeger, Sp. Asst. to Atty. Gen. (Francis M. Shea, Asst. Atty. Gen., and Hubert Margolis, Atty., of Washington, D. C., and Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Virgilio Brunet, of San Juan, P. R., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico reversing a judgment of the District Court of San Juan and ordering the appellant, who is the Commissioner of Education of Puerto Rico, to reinstate the appellee in his former office of assistant superintendent of schools of the school district of Lares.

On September 3, 1942, the appellee filed a petition for mandamus in the Insular District Court in which he alleged that he was a school teacher who had worked for over ten years in the public schools of the Municipality of Lares; that "When Law No. 312, approved May 15, 1938, came into effect, the Commissioner of Education, respondent in this case, appointed the petitioner to work on a permanent basis as assistant superintendent of the Public Schools of Lares, Puerto Rico, at a salary of $125 per month;" that he was so employed on August 4, 1942, when he received

948

a letter from the appellant directing him to report to the Aguada-Moca district on August 10, 1942, for work of the same kind and at the same salary; that no reason for the transfer whatever was given in the letter, and that, although repeatedly requested, the appellant has refused and still refuses "without any legal justification" to reinstate him in his former position in Lares. The appellant demurred generally to this petition and also answered admitting the facts alleged but asserting his legal right under Act No. 312 referred to above and § 17 of the Organic Act, 48 U.S.C.A. § 783, to make the transfer, which, he said, was "in order to improve the service." The Insular District Court sustained the demurrer and finding the petition not amendable, entered a judgment dismissing the petition. On appeal the Supreme Court of Puerto Rico reversed, and thereupon the Commissioner of Education took this appeal to us.

Two questions are presented. The first is whether Act No. 312 Laws of Puerto Rico 1938, prevents the Commissioner of Education of Puerto Rico from transferring a teacher who has attained a permanent status from one municipality to another whenever in the Commissioner's judgment such a transfer will "improve the service" in some unspecified particular, and, second, if it does, whether it is in conflict with § 17 of the Organic Act. The Supreme Court of Puerto Rico answered the first question in the affirmative and the second in the negative and we agree

Act No. 312 of the Laws of Puerto Rico 1938, entitled "An Act, to establish the permanent appointment of public-school teachers after a specified probation period; to determine the procedure for the removal of said teachers, and for other purposes," reads, so far as here material, as follows:

"Section 1.—Every public-school teacher in active service through an appointment made in accordance with the school law and the regulations of the Department of Education, who shall have practised as such in a school of any category during the probation period hereinafter specified, except special teachers, shall be entitled to be contracted as a permanent teacher in the category in which he may be practising his profession at the expiration of the said probation period, without any further proof of classification or professional ability than the holding of a life license which shall be issued at the termination of the probation period to such teacher as, in the judgment of the Department of Education, shall have shown sufficient professional ability: *Provided,* That for the purposes of this Act, no consideration shall be given to the time such teachers may have been practising as substitutes or by virtue of provisional licenses; *And provided, further,* That such teachers shall be entitled to be contracted as permanent teachers in the municipality where they may be teaching at the expiration of the probation period."

"Section 4.—Resignations, leaves without pay, transfers, and promotions of permanent teachers shall be governed by the regulations promulgated for the purpose by the Commissioner of Education."

We assume from the pleadings that the appellee, although an assistant superintendent of schools, is a "teacher", and that Section 1 of the Act is applicable to him, that is, that he had satisfactorily completed his probationary teaching period, attained permanent status, and had been licensed and "contracted as a permanent teacher" in the Municipality of Lares, according to § 1 of the Act. Furthermore the regulation with respect to the transfer of teachers promulgated by the Commissioner under § 4 authorizes the transfer of a permanent teacher for the general purpose alleged in the appellant's answer.[1] So we come directly to the question of the meaning of Sections 1 and 4 of Act No. 312 quoted above.

These sections are, to some extent at least, in apparent conflict. Section 1 provides that teachers who have attained a permanent status "shall be entitled to be contracted as permanent teachers in the municipality where they may be teaching at the expiration of the probation period"— in the case at bar, Lares—but Section 4 provides that "transfers, * * * of per-

[1] "Section 1. Any teacher employed in the public schools in a position of a permanent, probationary, or any other nature, whatever his category or rank, may be transferred from the school in which he may be discharging his duties or from the municipality in which he may be exercising his office to a position of equal category in any other school or municipality in which his services may be considered more necessary and more conducive to the good of the school system, or when, for any other reason, the needs of the system demand such transfer."

manent teachers shall be governed by the regulations promulgated for the purpose by the Commissioner of Education." The Commissioner argues that the sections can be harmonized by construing them to mean that the Commissioner cannot transfer a permanent teacher from one municipality to another arbitrarily, unreasonably, or in bad faith, but that he can make such a transfer without specifying his reasons therefor whenever in his judgment such transfer "would be advantageous, as subserving one or more of the needs of the school system." He says that this is not only the most logical construction of the two provisions but also that it is the construction which we ought to adopt in order to avoid raising any question of conflict between the Insular Act and Section 17 of the Organic Act.

As a practical matter this view of the Act would prevent the second proviso of § 1 from having any real braking effect on administrative action of the Commissioner transferring a teacher from one municipality to another. The Supreme Court of Puerto Rico did not adopt it, but expressly leaving open "the vital question of whether the Commissioner may under Section 4 provide in the future regulations for transfer because schools are closed or because courses are curtailed due to shifts in population, or for similar reasons," held that § 1 gives permanent teachers a vested right to teach permanently in the municipality where the probationary period was satisfactorily completed, of which they cannot be divested by the Commissioner without a specification of the particular reasons therefor. That is to say, it held that § 4 of the Act did not authorize a regulation giving the Commissioner broad powers of transfer for "the good of the school system" or "for the needs of the system" generally, but only authorized regulations governing transfers for specified reasons, the sufficiency of which the court could consider in particular cases as they arise.

■ It seems to us that the Supreme Court of Puerto Rico adopted a reasonable interpretation of Act No. 312 giving substantial meaning to both § 1 and § 4 and that its decision is clearly correct. Certainly we cannot say that it is "inescapably wrong" or "patently erroneous" and from this it follows that we must accept it as though it were our own. Bonet v. Texas Co., 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401; DeCastro v. Board of Commissioners of San Juan, 64 S.Ct. 1121.

■ We come now to the question which gives us jurisdiction to pass upon the meaning of the insular act (Municipality of Rio Piedras v. Serra, Garabis & Co., 1 Cir., 65 F.2d 691, 701), that is, the question whether that Act, as above construed, is in conflict with the Organic Act.

Section 17 of this latter statute, 39 Stat. 956, 957, provides: "That the commissioner of education shall superintend public instruction throughout Puerto Rico; all proposed disbursements on account thereof must be approved by him, and all courses of study shall be prepared by him, subject to disapproval by the governor if he desires to act. He shall prepare rules governing the selection of teachers, and appointments of teachers by local school boards shall be subject to his approval, and he shall perform such other duties, not inconsistent with this Act, as may be prescribed by law."

The Commissioner's argument is, to quote from his brief, that: "Section 17 of the Organic Act, authorizing the Commissioner of Education to 'superintend public instruction throughout Puerto Rico', to approve 'appointments of teachers' and to prepare 'rules governing' their selection, empowers him to transfer teachers within the Insular school system; for the power to superintend is the power to control, and the power of appointment is normally accompanied by the power of removal—a power not here involved but far broader than the power to make transfers within the school system." In short he says "that the Commissioner's specific powers of appointment and his general powers of superintendence must include the power to make transfers within the school system."

■ The Supreme Court of Puerto Rico rejected this argument. It said that the provision of § 17 that the Commissioner "shall superintend public instruction" does not confer upon him any specific powers which he would not otherwise have, and that power over the appointment of a teacher does not include the power to transfer him, transfer being an incident of tenure—a matter not mentioned in the Organic Act and therefore one which can be dealt with by the Insular Legislature. This conclusion is in no sense binding upon us. We can adopt or reject it without reference to the opinion of the court below,

"except for the weight of the intrinsic authority of all lower court opinions" (Deputy v. Du Pont, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416), but it seems to us correct.

Congress in § 17 of the Organic Act saw fit to clothe the Commissioner with general supervisory powers over the school system of Puerto Rico, with specific power over disbursements and the curriculum, and over the appointment of teachers by local school boards. It did not specifically give. him direct authority over the removal or demotion of teachers (matters with which we are not here concerned) nor did it give him specific authority to assign teachers to any particular locality or to transfer them from one locality to another. These omissions seem to us significant.

There can be no doubt that transfer is an incident of tenure and the omission in Section 17 of any reference to tenure, an omission which Congress could readily have supplied had it wished to do so, seems to us to indicate clearly that Congress intended as part of its program of insular self-government to give control over teachers' tenure to the Puerto Rican Legislature.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.