El Pueblo de Puerto Rico, demandante y apelado, *v.* Rafael Campos del Toro, acusado y apelante.

Núm. 13489.—*Sometido:* Enero 21, 1949.   *Resuelto:* Abril 18, 1949.

*Isaías M. Crespo y E. Martínez Avilés,* abogados del apelante; *Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino,* en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Rafael Campos del Toro fué acusado ante la Corte de Distrito de Arecibo de una infracción a la Ley núm. 72 de 26 de abril de 1940 (Ley de Alimentos, Drogas y Cosméticos de Puerto Rico) consistente en que el 5 de marzo de 1947, en la Farmacia Campos, de su propiedad, "tenía y ofrecía en venta aceite de almendras comercial adulterado con aceite de semillas de algodón."

Luego de un juicio por tribunal de derecho se le declaró convicto del delito imputádole y fué condenado a pagar una multa de $25, y las costas. Apeló para ante este Tribunal y en su alegato señala seis como los errores cometidos por el tribunal inferior.

El primero de ellos es que el tribunal a quo erró al declarar sin lugar la excepción perentoria a la acusación. Su fundamento es que en la misma no se alegó la cantidad de aceite de semillas de algodón que adulteraba el aceite de almendras, ni que este último estuviera rotulado como tal, o en forma otra alguna. En apoyo de su contención cita el caso de *Pueblo* v. *Marín,* 54 D.P.R. 651, en el cual este Tribunal resolvió que una acusación bajo la Ley núm. 63 de

28 de abril de 1931 (Leyes de ese año, pág. 415) (Para prohibir la venta, almacenaje o transporte de alimentos y drogas o medicinas adulterados o falsamente rotulados, etc.) era insuficiente por no haberse alegado en ella que el aceite de almendras comercial vendido era inferior a la norma oficial de pureza especificada en la ley, o que la adición de ciertas sustancias mencionadas en la acusación hacía que el producto fuera inferior a la norma o calidad exigidas por la ley.

El caso de *Pueblo* v. *Marín,* supra, no es aplicable al de autos, ya que la ley que allí se alegó infringida no contenía, en la enumeración de los casos en que las drogas se considerarían adulteradas bajo dicha ley, una disposición igual o similar a la del artículo 14(*d*)(2) de la ley que aquí se alega infringida, en el sentido de que se considerará adulterada una droga([1]) "Si . . . alguna substancia hubiera sido (1) mezclada o empaquetada con la misma, con el fin de reducir su calidad o fuerza, o (2) *sustituída total o parcialmente por ella."* (Bastardillas nuestras.)

Si bien el propio artículo 14 enumera otros casos en que una droga se considerará también adulterada, bajo algunos de los cuales sería necesario alegar la forma en que la pureza o potencia de la droga adulterada difiere de las normas de pureza o potencia exigidas por la Farmacopea de Estados Unidos o el Formulario Nacional, bajo el inciso (*d*)(2) mencionado basta con que se alegue la adulteración de la droga y la sustancia con la cual la misma ha sido adulterada. Creemos que la alegación de que el acusado "tenía y ofrecía en

---

([1]) De acuerdo con el artículo 2, inciso (*d*), de la misma ley "El término 'droga' significará (1) . . . . . ; (2) artículos destinados para usarse en el diagnóstico, curación, mitigación, tratamiento, o prevención de enfermedades del hombre u otros animales; (3) artículos (que no sean alimentos) destinados a afectar la escructura o cualquier función del cuerpo del hombre u otros animales; y (4) . . . . . ."

De acuerdo con la prueba, el aceite de almendras se usa como "lubricante para los niños y en quemaduras", estando, por tanto incluído en el término "droga" según lo define la ley.

venta aceite de almendras comercial adulterado con aceite de semillas de algodón'' es suficiente para imputar una de las varias modalidades del delito de adulteración de drogas, bajo la ley, y por lo tanto, que no erró la corte inferior al declarar sin lugar la excepción perentoria.

■■ El segundo error según el apelante, lo constituye el negarse la corte inferior a concederle un juicio por jurado. En su alegato se limita a afirmar que la enmienda hecha por el Congreso a nuestra Ley Orgánica el 5 de agosto de 1947 (Ley Pública núm. 362, Primera Sesión del Congreso 80) por la que se adicionó al artículo 2 de dicha ley un nuevo párrafo,(²) hizo extensiva a Puerto Rico la Sección 2 del Artículo IV de la Constitución de los Estados Unidos(³) y ésta a su vez hizo aplicable a Puerto Rico la enmienda VI de la Constitución.(⁴)

Su posición, pues, ante este Tribunal es que tenía derecho, en virtud de la enmienda VI de la Constitución de los Estados Unidos, a un juicio por jurado en la corte inferior. Igual posición asumió ante dicho tribunal el día del juicio al plantear, al iniciarse el mismo, una ''cuestión de derecho'', la que, según las propias palabras del abogado defensor, suscitaba ''más bien como cuestión de récord'', argu-

(²)La sección 7 de la citada ley enmendatoria de nuestra Ley Orgánica lee: ''La sección 2 de dicha Ley Orgánica (48 U.S.C., Sec. 737) se enmienda adicionando al final de la misma el siguiente párrafo:

'Los derechos, privilegios e inmunidades de los ciudadanos de los Estados Unidos se respetarán en Puerto Rico hasta el mismo grado que si Puerto Rico fuera un Estado de la Unión y sujeto a las disposiciones del inciso 1 de la sección 2 del Artículo IV de la Constitución de los Estados Unidos.' ''

(³)La sección 2 del Artículo IV de la Constitución de los Estados Unidos lee:

''Los ciudadanos de cada Estado tendrán derecho a todos los privilegios e inmunidades de los ciudadanos en los distintos Estados.''

(⁴)La enmienda VI de la Constitución de los Estados Unidos lee así:

''En todos los procesos criminales el acusado tendrá derecho a un juicio rápido y público, por un jurado imparcial del Estado y Distrito en que el delito se haya cometido, el cual Distrito debe haber sido previamente determinado por ley, y a ser informado de la naturaleza y causa de la acusación; de carearse con los testigos de cargo; de usar medios compulsorios para conseguir testigos a su favor, y de tener para su defensa la ayuda de abogado.''

mentando entonces sobre el derecho del acusado a un juicio por jurado en virtud del precepto constitucional ya mencionado, y por razón de la citada enmienda a nuestra Ley Orgánica.

De los autos ante nos aparece que el día 4 de agosto de 1947, al darse lectura a la acusación en este caso, el acusado se limitó a hacer alegación de inocencia. Su solicitud de juicio por jurado fué hecha, por primera vez, el día señalado para la celebración del juicio, por los fundamentos y en la manera y forma ya indicados. No alegó razón otra alguna, ni invocó la discreción del tribunal bajo el artículo 178 del Código de Enjuiciamiento Criminal.

No habiendo, pues, el acusado, al serle leída la acusación, solicitado juicio por jurado—al cual tenía derecho en virtud de las disposiciones del citado artículo,(⁵) por tratarse de una acusación por delito *misdemeanor* originariamente presentada en una corte de distrito—renunció desde ese momento, según los propios términos de dicha disposición de ley, a ser juzgado por un jurado. *Ex Parte Torres,* 4 D.P.R. 80, 82 (2da. ed.); *Pueblo* v. *Sutton,* 17 D.P.R. 345, 359.

Su contención de que tenía derecho a un juicio por jurado bajo la enmienda VI es insostenible. Dicha enmienda no garantiza a los ciudadanos de los Estados Unidos un juicio por jurado en las cortes estaduales. *Maxwell* v. *Dow,* 176 U.S. 581, 44 L. ed. 597; *Brooks* v. *Missouri,* 124 U.S. 394,

---

(⁵)El artículo 178 del Código de Enjuiciamiento Criminal lee:

"Artículo 178.—(Enmendado según la Ley de 22 de julio de 1919, pág. 685.) Cuestiones de hecho en casos de delito grave (*felony*) y en casos de *misdemeanor* siempre que originariamente se presentare la acusación en la corte de distrito y fueren también de la competencia de las cortes municipales, habrán de ser juzgadas por el jurado, cuando el acusado o acusados o cualquiera de ellos, lo pidiere. Dicha elección deberá notificarse al tribunal cuando se haga la primera lectura de la lista que contenga la causa. Si se hiciere dicha elección, ésta se hará constar en el récord; si no se hiciere, se hará constar así en dicho récord, y se considerará que el derecho a ser juzgado por jurado ha prescrito y la causa será juzgada por el tribunal. Sin embargo, si se alegan justas razones, el tribunal podrá conceder el juicio por jurado en cualquier fecha subsiguiente a la lectura de la lista o relación de causas."

31 L. ed. 454; *Fay* v. *New York,* 332 U.S. 261, 91 L. ed. 2043. Tampoco, en ausencia de legislación congresional a ese efecto, garantiza a los ciudadanos de los Estados Unidos en Puerto Rico un juicio por jurado en las cortes insulares. *Balzac* v. *Porto Rico,* 258 U.S. 298, 66 L. ed. 627. Véanse, además *Hawkins* v. *Bleakly,* 243 U.S. 210, 61 L. ed. 678; *Dowdell* v. *United States,* 221 U.S. 325, 55 L. ed. 753; *Dorr* v. *United States,* 195 U.S. 138, 49 L. ed. 128; *Hawaii* v. *Mankichi,* 190 U.S. 197, 47 L. ed. 1016. Y no vemos cómo la enmienda de 5 de agosto de 1947 a nuestra Ley Orgánica, al disponer que "los derechos, privilegios e inmunidades de los ciudadanos de los Estados Unidos se respetarán en Puerto Rico hasta el mismo grado que si Puerto Rico fuera un Estado de la Unión y sujeto a las disposiciones del inciso 1 de la sección 2 del Artículo IV de la Constitución de los Estados Unidos", pueda considerarse que extiende a los ciudadanos de los Estados Unidos en Puerto Rico el derecho constitucional de juicio por jurado, cuando nada hay en su lenguaje que eso indique.

La mención que se hace de la Sección 2 del Artículo IV de la Constitución que dispone que "los ciudadanos de cada Estado tendrán derecho a todos los privilegios e inmunidades de los ciudadanos de los diferentes Estados", nada agrega a tal efecto.

No existe, por lo tanto, el segundo error señalado.

■ El apelante no discute en su alegato los señalamientos de error tercero y cuarto. Según sus propias palabras, "no tienen gran importancia". En efecto, así es, y no hemos de considerarlos.

■ El quinto señalamiento es el de que la corte inferior cometió error "al negarse a dejar abierto el caso para hacer un análisis químico imparcial del contenido de un frasco o botella conteniendo la muestra entregada por el inspector al acusado, que le sirvió de base para la acusación." El sexto,

de que cometió error al apreciar la prueba. Los consideraremos conjuntamente.

La prueba, en síntesis, demostró que en la fecha indicada en la acusación el acusado tenía en la Farmacia Campos, de su propiedad, en Arecibo, un envase que estaba en el mostrador, rotulado "aceite de almendras comercial". Tomada una muestra por el inspector del Departamento de Salud, por triplicado, luego de sellarse, rotularse e identificar los frascos con sus iniciales, le entregó una de ellas al acusado, explicándole el objeto de la misma. Otra muestra la envió al laboratorio del Departamento para análisis, lo que, llevado a cabo por el químico Guillermety, demostró que el aceite resultaba en su totalidad aceite de semillas de algodón, según el proceso cualitativo y cuantitativo seguido para el análisis. El aceite de almendras se usa como lubricante para los niños, y en quemaduras, mientras que el de semillas de algodón se usa para lubricar relojes y hacer jabones finos.

Fué en el acto del juicio, celebrado finalmente el 13 de enero de 1948, que el acusado solicitó del tribunal que se verificara un nuevo análisis, de la muestra entregádale a él por el inspector el 5 de marzo de 1947, por un químico "imparcial". Su solicitud estuvo predicada en que habiendo comprado el aceite de almendras a una firma de los Estados Unidos, según el químico de dicha firma, el aceite vendídole era en un 90 por ciento aceite de almendras, sin que pudiera explicarse el resultado del análisis del Gobierno que indicaba que en su totalidad era aceite de semillas de algodón.

La corte inferior consideró tardía la solicitud hecha por el acusado más de diez meses después de haberle sido entregada la muestra por el inspector del Departamento de Salud. No creemos que abusara de su discreción, máxime cuando el acusado fué informado oportunamente por el inspector del propósito de la entrega de dicha muestra.

■■ La defensa del acusado giró esencialmente alrededor del hecho de que siempre creyó de buena fe que la firma de quien había comprado el aceite de almendras le había ven-

dido tal aceite. Ofreció prueba documental, consistente en facturas de compras de "aceite de almendras comercial" a una firma en los Estados Unidos.

La ley que se alega infringida en este caso, actualmente en vigor, dispone en el inciso (*b*) de su artículo 5 que ninguna persona estará sujeta a las penalidades de dicha ley si presentare una garantía firmada por la persona residente en la Isla de Puerto Rico, que contenga el nombre y dirección de dicha persona, de la cual hubiera recibido de buena fe el artículo, al efecto de que el mismo no está adulterado ni fraudulentamente rotulado según el significado dado a estos términos por la ley. Tal garantía no fué presentada por el acusado en este caso. Habiendo importado el aceite que resultó adulterado, asumió el riesgo de infringir la ley, de estar el mismo adulterado, en cualesquiera de las modalidades establecidas en el estatuto. Una de estas modalidades es, como ya hemos visto, que si una droga ha sido *total* o *parcialmente* sustituída por alguna otra sustancia, se considerará adulterada. Tal es la situación en el presente caso, en que el aceite que se tenía en venta como aceite de almendras comercial resultó ser, en su totalidad, aceite de semillas de algodón. La prueba por lo tanto es suficiente para sostener la convicción, y no creemos que el tribunal inferior cometiera manifiesto error al apreciarla.

*No existiendo a nuestro juicio ninguno de los errores señalados por el apelante, procede confirmar la sentencia apelada.*