EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MANUEL FIGUEROA, acusado y apelante.

Número 15537.

*Sometido:* 2 de diciembre de 1953.　*Resuelto:* 4 de noviembre de 1954.

*José L. Feliú Pesquera, José R. Fournier* y *Santos P. Amadeo,* abogados del apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Manuel Figueroa fué juzgado en 1953 en el Tribunal Superior ante tribunal de derecho y convicto del delito grave de comprar mercancía a sabiendas de que había sido hurtada, en violación del art. 438 del Código Penal, ed. 1937. Apeló contra la sentencia de presidio de 4 a 6 meses que le fué impuesta. El único señalamiento es que el tribunal sentenciador cometió error al permitirle a uno de los abogados del acusado que renunciara el derecho del acusado a juicio por jurado. El acusado admite que el juicio por jurado en un caso de delito grave puede renunciarse en esta jurisdicción; no obstante, su teoría es que la renuncia debe hacerla el acusado personalmente y no a través de su abogado.

El párrafo 2 de la Sección 11 del Artículo II de nuestra Constitución dispone que en los procesos por delito grave el acusado ". . . tendrá derecho a que su juicio se ventile ante un jurado imparcial . . .".(¹) Anteriormente, nuestras Cartas Orgánicas no tenían garantía alguna de jui-

(¹) El párrafo 2 de la Sección 11 del Artículo II dispone como sigue: "En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve."

cio ante jurado, ni en los casos civiles ni en los criminales. La determinación del asunto se dejó en manos de la Asamblea Legislativa de Puerto Rico. *Balzac* v. *Porto Rico*, 258 U. S. 298. La Asamblea Legislativa ejercitó este poder proveyendo que todo acusado tendrá derecho a juicio ante jurado en casos de delitos graves y en ciertos casos de delitos menos graves; pero si el acusado no elegía afirmativamente el juicio ante jurado, este derecho quedaba renunciado. Art. 178, Código de Enjuiciamiento Criminal, ed. de 1935.(²)

El párrafo 2 de la Sección 11 del Artículo II convirtió el anterior derecho estatutario a juicio ante jurado en casos de delitos graves en un derecho constitucional. *Informe de la Comisión de Carta de Derechos*, XXI Revista Jurídica de la Universidad de Puerto Rico, 1, 15, 16; *Notes and Comments on the Constitution of the Commonwealth of Puerto Rico*, 42. Pero el debate en la Convención Constituyente claramente estableció que el párrafo 2 no tuvo por miras que el juicio ante jurado en casos de delitos graves fuera mandatorio en Puerto Rico. El derecho a juicio ante jurado en tales casos—si bien ahora un derecho constitucional más bien que estatutario— permanece siendo, como en el pasado, un privilegio del acusado el cual éste puede renunciar. Diario de Sesiones, Convención Constituyente de Puerto Rico, 605; *Ramos* v. *Rivera*, 68 D.P.R. 548, 560. El resultado es que el art. 178 del Código de Enjuiciamiento Criminal ya no se necesita para garantizar el derecho a juicio ante jurado en casos de delitos graves. Pero el art. 178 permanece en vigor no solamente

---

(²) El art. 178 prescribe como sigue: "Cuestiones de hecho en casos de delito grave (*felony*) y en casos de *misdemeanor* siempre que originariamente se presentare la acusación en la corte de distrito y fueren también de la competencia de las cortes municipales, habrán de ser juzgadas por el jurado, cuando el acusado o acusados o cualquiera de ellos, lo pidiere. Dicha elección deberá notificarse al tribunal cuando se haga la primera lectura de la lista que contenga la causa. Si se hiciere dicha elección, ésta se hará constar en el récord; si no se hiciere, se hará constar así en dicho récord, y se considerará que el derecho a ser juzgado por jurado ha prescrito y la causa será juzgada por el tribunal. Sin embargo, si se alegan justas razones, el tribunal podrá conceder el juicio por jurado en cualquier fecha subsiguiente a la lectura de la lista o relación de causas."

a los fines de conceder al acusado el derecho a juicio ante jurado en ciertos casos de delitos menos grave si que también para proveer la manera de renunciar el derecho a juicio por jurado.

El acusado admite que en Puerto Rico el juicio ante jurado puede renunciarse por el acusado. Sin embargo, arguye que la renuncia debe formularse por el acusado personalmente, y no por medio de su abogado. Predica su teoría (a) en una proposición de derecho constitucional y (b) en una cuestión de interpretación estatutaria. Examinemos primeramente la cuestión constitucional.

## I

A tenor con el apartado 3 de la Sección 2 del Artículo III y con la Enmienda VI de la Constitución de los Estados Unidos, un acusado tiene derecho a juicio ante jurado en un caso criminal en las cortes federales. La Corte Suprema de los Estados Unidos ha resuelto que estas disposiciones constitucionales federales no establecen el jurado como parte de la estructura del gobierno o como un elemento jurisdiccional de una corte sentenciadora. Por el contrario, el juicio ante jurado bajo la Constitución Federal es un privilegio del acusado, que éste puede renunciar. *Patton* v. *United States*, 281 U. S. 276. Véanse *State* v. *Hernández*, 123 P.2d 387 (N.M., 1942) ; Oppenheim, *Waiver of Trial by Jury in Criminal Cases*, 25 Mich.L.Rev. 695; Griswold, *The Historical Development of Waiver of Jury Trial in Criminal Cases*, 20 Va.L.Rev. 655; 30 Col.L.Rev. 1063.(³)

---

(³) La Corte Suprema de los Estados Unidos ha resuelto también que un acusado que competente e inteligentemente haya renunciado su derecho a asistencia de abogado puede válidamente en igual forma renunciar su derecho a juicio por jurado sin el consejo de abogado. *Adams* v. *U. S. ex rel McCann*, 317 U. S. 269. Véanse Anotación, 143 A.L.R. 445; 41 Mich.L.Rev. 495; 91 U. of P. of Pa.L.Rev. 76; 55 Harv.L.Rev. 1209. Esto no quiere decir, sin embargo, que un acusado asistido de abogado *tenga* que renunciar este derecho personalmente. Por el contrario, como más adelante veremos en la Parte II, la regla normal—y más efectiva—es que el acusado actúe a través de abogado, tanto en cuanto a renunciar al juicio por jurado como en cuanto a otros asuntos.

El caso de *Patton* también fijó las condiciones con respecto a la renuncia al juicio ante jurado. En dicho caso se dice a la pág. 312: ". . . para que una renuncia cualquiera sea eficaz, debe obtenerse la anuencia del abogado del gobierno y la sanción de la Corte, además del consentimiento expreso e inteligente del acusado." La Regla 23 (*a*) de las Reglas Federales de Enjuiciamiento Criminal reexpone la forma de renuncia prescrita en el caso de *Patton*, con la adición de que la renuncia debe ser por escrito. (⁴)

Sostiene el acusado que el derecho a juicio ante jurado provisto en el párrafo 2 de la Sección 11 del Artículo II de nuestra Constitución puede renunciarse solamente en la forma prescrita en el caso de *Patton*. Su razonamiento es como sigue: La Ley Pública 600, que autorizó al pueblo de Puerto Rico a adoptar una constitución, dispuso que ésta contendrá una carta de derechos. 64 Stat. 319, 48 U.S.C.A. secs. 731*b*–731*e*. Esto indicaba el interés especial en una carta de derechos. Ésta, incluyendo el derecho a juicio ante jurado en casos de delitos graves, fué aprobada por el Con-

---

(⁴) La Regla 23 (*a*), según aparece en 327 U. S. 832, 850, dispone como sigue: "Los casos que deban verse ante jurado serán así vistos a menos que el acusado renuncie por escrito al juicio por jurado con la aprobación de la corte y el consentimiento del pueblo."

La nota del Comité Consultivo a la Regla 23 (*a*), párrafo 2, dispone como sigue: "La disposición en relación con la renuncia del acusado a juicio por jurado, encarna la práctica actual, cuya constitucionalidad ha sido sostenida, *Patton* v. *United States*, 281 U. S. 276; *Adams* v. *United States ex rel. McCann*, 317 U. S. 269; *cf.* Reglas 38 y 39 de las Reglas Federales de Enjuiciamiento Civil. Muchos Estados por disposición estatutaria expresa permiten que se renuncie el juicio por jurado en casos criminales. Véase A.L.I. *Code of Criminal Procedure Commentaries*, págs. 807–11."

El requisito al efecto de que el Pueblo y el tribunal deben consentir a la renuncia ha sido criticado por el fundamento de que ello menoscaba la teoría de que el derecho a renunciar al jurado es exclusivamente un privilegio del acusado. Orfield, *Criminal Procedure from Arrest to Appeal* 393; Oppenheim, supra, pág. 736; Grant, *Waiver of Jury Trial in Felony Cases*, 20 Calif.L.Rev. 132, 161; 45 Harv.L.Rev. 932; 27 Ill.L.Rev. 447; 41 Mich.L.Rev. 495; 6 Tulane L.Rev. 660, 664; Anotación, 79 A.L.R. 563, 567; sec. 266, A.L.I. Código de Enjuiciamiento Criminal. Bajo el art. 178 del Código de Enjuiciamiento Criminal la elección corresponde al acusado únicamente.

greso cuando éste aceptó la Constitución. Según el acusado, "Por lo tanto, el derecho a juicio por jurado existe en Puerto Rico por disposición expresa del Congreso. Por esta razón para ser más efectivo, el ejercicio del derecho constitucional a juicio por jurado en Puerto Rico, éste debe ser garantizado bajo las mismas condiciones que se garantiza este derecho en las cortes federales."

No estamos de acuerdo. El acusado no ha citado ningún caso y ninguno conocemos que resuelva afirmativamente que bajo la Constitución Federal o bajo la Regla Federal 23(a) el acusado debe renunciar al jurado personalmente y no a través de su abogado.(5) Pero aun cuando supusiéramos que la regla federal constitucional o estatutaria requiera que el acusado renuncie personalmente al jurado y no a través de su abogado, dicha regla federal no requiere inexorablemente el mismo método de renuncia en nuestras cortes. El acusado arguye en efecto que la regla federal rige en nuestros tribunales bajo la teoría (a) de que nuestra Constitución—especialmente el Artículo II, que comprende la carta de derechos, y más especialmente, el párrafo 2 de la Sección 11, que establece el derecho a juicio ante jurado—es una ley federal; y (b) que como tal ley federal el párrafo 2 debe interpretarse como que incorpora la regla federal con referencia a la forma por la cual un acusado puede renunciar su derecho a juicio ante jurado. Por los motivos que expondremos más adelante, rechazamos este argumento.

Nuestras Cartas Orgánicas eran leyes federales. El significado de sus disposiciones era por consiguiente determinado con absoluta autoridad por la Corte de Apelaciones para

---

(5) El caso de *Patton* a la pág. 312 y la Regla Federal 23(a) exigen que "el acusado" sea el que renuncie. Si esto quiere decir que el acusado tiene personalmente que renunciar al jurado, *quaere*. Puede ésta haber sido la intención de los redactores de la Regla 23(a), en vista del sitio en el Formulario 42 para que la renuncia sea firmada por el propio acusado. De cualquier modo, la regla Federal no es tan clara como la Constitución de California que más adelante discutiremos y que hace claro que el acusado debe renunciar al jurado personalmente. *Cf. Jabczynski* v. *United States*, 53 F.2d 1014 (C.A. 7, 1931), cert. denegado, 285 U. S. 546.

el Primer Circuito y por la Corte Suprema de los Estados Unidos, y no por nosotros. *Gallardo* v. *González*, 143 F.2d 947, 949–50 (C.A. 1, 1944); *Buscaglia* v. *District Court of San Juan*, 145 F.2d 274 (C. A. 1, 1944); *Arroyo* v. *Puerto Rico Transp. Authority*, 164 F.2d 748 (C.A. 1, 1947); *Ballester Hermanos* v. *Tribunal de Contribuciones*, 66 D.P.R. 560, 563–4, escolio 2, revocado por otros motivos, *Buscaglia* v. *Ballester*, 162 F.2d 805 (C.A. 1, 1947), cert. denegado, en 332 U. S. 816. Pero nuestra Constitución descansa sobre base distinta. Esto se ha indicado por la Corte de Apelaciones para el Primer Circuito. En *Mora* v. *Mejías*, 206 F.2d 377 (C.A. 1, 1953), el Juez Presidente Magruder, hablando por la corte, dijo a la pág. 382 que ". . . la Constitución del Estado Libre Asociado de Puerto Rico contiene una cláusula de debido procedimiento, la cual será *con absoluta autoridad* interpretada y aplicada por el Tribunal Supremo de Puerto Rico *como cuestión de ley local.*" (Bastardillas nuestras.)

Bajo los términos de la Ley Pública 600 la Constitución no podía empezar a regir hasta que el Congreso la aceptara. Y el Congreso dió su aceptación bajo ciertas condiciones, las cuales fueron luego aprobadas por el pueblo de Puerto Rico. Ley Pública 447, 66 Stat. 327, 48 U.S.C.A. *Cum. Pocket Part*, sec. 731*d* nota. Pero esto no milita en contra de nuestra conclusión de que la Constitución es una carta básica de gobierno local y no una ley federal. A tenor con la Sección 3 del Artículo IV de la Constitución de los Estados Unidos, que provee que la facultad de admitir nuevos estados reside en el Congreso, éste en el pasado ha fijado condiciones a la admisión de estados a la Unión; en algunos casos constituciones de estados no han empezado a regir hasta ser aprobadas por el Congreso. *Permoli* v. *Municipality No. 1 of the City of New Orleans*, 3 How. 588, 11 L.ed. 739 (1845); *Coyle* v. *Oklahoma*, 221 U. S. 559; Willoughby, *The Constitution of the United States* 403–6; Rottschaeffer, *Constitutional Law* 119; *Statement of Hon. Luis Muñoz Marín, Governor of Puerto Rico, Hearing before the Committee on Interior and*

*Insular Affairs, United States Senate, 1950*, pág. 9; 98 Cong.
Rec. 6188.(⁶) No obstante, la Corte Suprema de los Estados
Unidos ha resuelto uniformemente que el significado de las
disposiciones de constituciones y estatutos es determinado por
las cortes estatales. *A.F. of L.* v. *Watson*, 327 U. S. 582, 596;
*Rescue Army* v. *Municipal Court*, 331 U. S. 549; *Spector
Motor Co.* v. *McLaughlin*, 323 U. S. 101; *Federation of Labor*
v. *McAdory*, 325 U. S. 450; *Pueblo* v. *Romero*, 71 D.P.R. 66,

---

(⁶) Al ser admitidos a la Unión, los estados nuevos están en el "mismo
nivel" que los demás estados. Por consiguiente, un estado nuevo puede,
luego de haber sido admitido, liberarse de cualquier condición que lo colo-
que en una posición de desigualdad. Pero no puede repudiar condición
alguna que le hubiese sido impuesta por legislación federal válida después
de su admisión. Véanse *Coyle* v. *Oklahoma*, supra; *Skiriotes* v. *Florida*,
313 U. S. 69, 77; *United States* v. *California*, 332 U. S. 19, 29, 30; *United
States* v. *Texas*, 339 U. S. 707, 715 *et seq.*; *Alabama* v. *Texas*, 347 U. S.
272, 274, opinión concurrente del Juez Reed; Rottschaeffer, supra, pág.
119; Willoughby, supra, págs. 310-4; Swisher, *American Constitutional
Development*, págs. 39, 557; Monnet, *Violation by a State of the Conditions
of its Enabling Act*, 10 Col.L.Rev. 591; Evans, *Cases on Constitutional
Law*, 4ta. ed. por Fenwick, pág. 83.

En cuanto al Estado Libre Asociado de Puerto Rico, véanse la Ley
600, la Ley 447, y la Resolución 34 de la Convención Constituyente, de
fecha 10 de julio de 1952. En la Resolución 34 la Convención aceptó las
condiciones propuestas en la Ley 447, incluyendo la adición de una nueva
oración a la Sección 3 del Artículo VII de la Constitución, que lee así:
"Cualquier enmienda o revisión de esta constitución deberá ser compatible
con la resolución decretada por el Congreso de los Estados Unidos apro-
bando esta constitución, con las disposiciones aplicables de la Constitución
de los Estados Unidos, con la Ley de Relaciones Federales con Puerto
Rico y con la Ley Pública 600 del Congreso Octogésimoprimero, adoptada
con el carácter de un convenio". 66 Stat. 327.

La Resolución 34 explica la aceptación de esta nueva oración de la
manera siguiente: "Por Cuanto, según consta del informe del Comité co-
rrespondiente de la Convención Constituyente, de los debates en el seno
de la misma y de las explicaciones públicas relativas al Artículo VII de
la Constitución del Estado Libre Asociado de Puerto Rico, fué entendido
en todo momento por el pueblo de Puerto Rico y por sus representantes
en la Convención Constituyente que las enmiendas a la Constitución ha-
brían de adoptarse de conformidad con las disposiciones fundamentales
que informan el Convenio establecido entre el pueblo de Puerto Rico y el
Congreso de los Estados Unidos; . . .".

Según Muñoz Marín, *Puerto Rico and the U. S., Their Future Together,
Foreign Affairs, July 1954*, 541, 547: "Él [el Estado Libre Asociado] hace
y puede cambiar su constitución dentro de los términos del convenio, que
incluye los principios aplicables de la Constitución de los Estados Unidos."
(Corchetes nuestros.)

69–70, y casos citados; Rottschaeffer, supra, 116. En igual forma, como indicó nuestra Corte de Apelaciones en el caso de *Mora*, el significado de la Constitución del Estado Libre Asociado de Puerto Rico se fija por este Tribunal.

La Constitución fué aprobada por los representantes electos del pueblo de Puerto Rico en una Convención Constituyente. Esto tuvo lugar luego de cuidadosa consideración de cada cláusula en comisiones y en debate en el hemiciclo de la Convención. Finalmente, el propio pueblo expresó su aprobación en las urnas. Los informes de comisiones y los debates en el hemiciclo—en adición al texto propiamente dicho —son las fuentes de mayor excepción en la tarea de determinar el significado de disposiciones específicas de nuestra Constitución. Véanse *González* v. *Tribunal Superior*, 75 D.P.R. 585; *Pueblo* v. *Tribunal Superior*, 75 D.P.R. 535; *Pueblo* v. *Quiñones*, 76 D.P.R. 955. Bajo esas circunstancias es imposible creer que la Constitución—un producto de redacción y debate locales—sea en efecto una ley federal, cuyo significado deba establecerse definitivamente por la Corte de Apelaciones para el Primer Circuito o por la Corte Suprema de los Estados Unidos, y no por nosotros.

En la Ley 600 el Congreso dijo "Que, reconociendo ampliamente el principio del gobierno por consentimiento de los gobernados, se aprueba esta Ley, con el carácter de un convenio, de manera, que el pueblo de Puerto Rico pueda organizar un gobierno basado en una constitución *adoptada por él mismo*." (Bastardillas nuestras.) El pueblo de Puerto Rico aceptó esta oferta. Adoptó su propia Constitución. En el preámbulo de la misma dijo que "*Nosotros, el pueblo de Puerto Rico . . . ordenamos y establecemos esta Constitución* para el estado libre asociado que *en el ejercicio de nuestro derecho natural* ahora creamos dentro de nuestra unión con los Estados Unidos de América." (Bastardillas nuestras.) El rol posterior del Congreso no resultó en hacer esta Constitución una ley federal. Más bien ". . . a tenor con autoridad congresional . . . [la Constitución] fué aprobada por el

pueblo y *aceptada* por el Congreso en 1952." Clark y Rogers, *The New Judiciary Act of Puerto Rico: A Definitive Court Reorganization*, 61 Yale L.J. 1147 (Bastardillas nuestras.) De esto surge que nuestra Constitución es una constitución local y no una ley federal. Véase *Mora* v. *Mejías*, 115 F. Supp. 610, 612 (U. S. Dist.Ct.P.R., 1953). *Cf. Mora* v. *Torres*, 113 F.Supp. 309 (U. S. Dist.Ct.P.R., 1953), confirmado en *Mora* v. *Mejías*, supra 386–8.[6a]

Nuestra conclusión es reforzada por el Artículo VII que fija el procedimiento para enmendar la Constitución. Durante un corto período la suerte de la Constitución estuvo en peligro debido a una proposición de que el Congreso aceptara la Constitución a condición de que las enmiendas a la misma estuvieran sujetas a su aprobación. Cuando la Ley 600 y la Constitución estaban ante el Congreso, sus proponentes claramente hicieron constar que un requisito de que las enmiendas a la Constitución tenían que ser aprobadas por el Congreso no sería aceptable por ellos. Manifestaciones del Hon. Luis Muñoz Marín, Gobernador de Puerto Rico, *Hearing before the Committee on Public Lands, 81st Cong., on H.R. 7674, Serial No. 26 (1950)*, págs. 8, 11, 14, 17; Hon. Antonio Fernós Isern, Comisionado Residente de Puerto Rico, *The Significance of the Reform*, Conferencia en la Universidad de Princeton, 1948, pág. 9; 98 Cong. Rec. págs. 6187, 6200, 7979–83; Muñoz Amato, *Congressional Conservatism and Puerto Rican Democracy in the Commonwealth Relationship*, XXI Revista Jurídica de la Universidad de Puerto Rico 321, 324–6, 285 *The Annals* 23, 25–6. Después de considerable

---

[6a] "¿Qué es una constitución? Es un acto constituyente del pueblo, que libremente ha determinado organizarse en un cuerpo político y prescribir para sí un sistema básico de gobierno propio. Eso es precisamente lo que el pueblo de Puerto Rico ha hecho a tenor con la Ley Pública 600." Magruder, *The Commonwealth Status of Puerto Rico*, 15 U.Pitt.L.Rev. 1, 14. El Artículo I de la Constitución, que fué aceptada por el Congreso, declara: "Se constituye el Estado Libre Asociado de Puerto Rico. Su poder político emana del pueblo y se ejercerá con arreglo a su voluntad, dentro de los términos del convenio acordado entre el pueblo de Puerto Rico y los Estados Unidos de América."

debate, el Congreso rechazó la proposición que requería dicha aprobación congresional. *Conference Report No. 2350, House of Representatives, 82d Congress, 2d session, to accompany H.J.Res. 430*, Ley Pública 447. En su consecuencia, bajo el Artículo VII, con la excepción de las restricciones comprendidas en la Ley núm. 447, que no son aquí pertinentes, las enmiendas a la Constitución empiezan a regir sin que haya que someterlas al Congreso. ([6b])

Si la Constitución hubiera provisto que las enmiendas a la misma estaban sujetas a la aprobación del Congreso, en realidad no sería una constitución, como dice el Congreso que es, 66 Stat. 327; sería meramente otra Carta Orgánica aprobada y redactada por el Congreso. Véase *Mora v. Mejías*, supra, 387. El Segundo Vicepresidente de la Convención Constituyente ha caracterizado la disposición del Artículo VII al efecto de que el derecho de enmendar la Constitución reside exclusivamente en el pueblo de Puerto Rico como . . . el alma del *status* del Estado Libre Asociado." Ha dicho que el requisito de la aprobación de las enmiendas por el Congreso ". . . habría llevado al pueblo de Puerto Rico a desempeñar el papel de agencia de redacción del Congreso." Gutiérrez Franqui y Wells, *The Commonwealth Constitution*, 285 *The Annals* 33, 40.([7])

---

([6b]) "El Artículo VII dispone que la Constitución puede ser enmendada únicamente por el pueblo puertorriqueño y sus representantes; el Congreso de los Estados Unidos no tiene facultad para alterarla." Wells, *The Nature of Puerto Rican Government and Politics, Aspect 2, Netherlands Universities Foundation for International Co-operation Symposium on Developments towards Self-government in the Caribbean Commission Territories*, 1 (sept., 1954).

([7]) El Juez Presidente Magruder ha hecho igual aseveración. Ha expresado que bajo la propuesta de que se requiera la aprobación Congresional de enmiendas a la Constitución ". . . el pueblo de Puerto Rico no estaría en completa libertad de determinar la estructura y los detalles de su gobierno propio local. De hecho lo único para lo cual estarían facultados sería para proponer al Congreso enmiendas a la Carta Orgánica que rige sus asuntos (cosa que ciertamente podían haber hecho antes de la aprobación de la Ley 600); y si el Congreso decidiera aprobar tales proposiciones, entonces se modificaría en dichos términos la estructura del gobierno propio local. Bajo limitación tal, sería un despropósito llamarle a

Bajo el Artículo VII el pueblo de Puerto Rico puede hacer cambios drásticos en la Constitución sin someterlos al Congreso. Podría, por ejemplo, enmendar o aun eliminar el derecho a juicio ante jurado.[8] Y escasamente podría sostenerse que tal enmienda sería una ley federal. De igual manera, las disposiciones originales de la Constitución—incluyendo el Párrafo 2 de la Sección 11 del Artículo II—son y deben tratarse como una Constitución local y no meramente como otra ley federal aplicable a Puerto Rico.[9]

El hecho de que cuestiones de ley local, incluyendo el significado de las disposiciones de nuestra Constitución, puedan levantarse en apelación de este Tribunal a la Corte de Apelaciones para el Primer Circuito no afecta nuestra conclusión. Aun bajo la Carta Orgánica nuestra interpretación de leyes locales era autoritativa a menos que fuera "inescapablemente errónea". *De Castro* v. *Board of Commr's.*, 322 U. S. 451; *Bonet* v. *Texas Co.*, 308 U. S. 463, 471; *Romero* v. *People of Puerto Rico*, 182 F.2d 864 (C.A. 1, 1950); *Cruzado* v. *People of Puerto Rico*, 210 F.2d 789 (C.A. 1, 1954); *Pueblo* v. *Romero*, supra. Por consiguiente, la revisión por la Corte de Apelaciones en tales casos, según el Juez Presidente Sr. Magruder, ". . . ha venido a ser casi letra muerta."

---

la forma de gobierno local adoptada por el pueblo de Puerto Rico una 'Constitución' adoptada por él mismo." Magruder, supra, 11.

[8] Esto no infringiría el requisito de la Ley 600 al efecto de que la Constitución debe contener una carta de derechos. De hecho, como hemos visto, el Congreso no proveyó juicios por jurado en Puerto Rico bajo las Cartas Orgánicas. *Balzac* v. *Porto Rico*, supra. La Comisión de la Carta de Derechos consideró proposiciones para la eliminación del juicio por jurado como cuestión de derecho constitucional. Y la disposición adoptada finalmente en relación al juicio por jurado no es tan amplia como las disposiciones a ese efecto de la Constitución Federal.

[9] Es curioso que el Párrafo 2 de la Sección 11 del Artículo II fuera una de las pocas cláusulas de la Constitución objeto de debate en el hemiciclo del Congreso. El Senador Stennis adelantó una enmienda para ampliar su alcance de manera que incluyera todos los casos criminales. El Senado rechazó dicha enmienda. La propia cuestión de la renuncia fué discutida por varios Senadores, aunque el punto específico ante nos no fué discutido. 98 Cong. Rec. págs. 7971, 7983-6. El Párrafo 3 fué finalmente aceptado intacto por el Congreso tal y como fué redactado por la Convención Constituyente.

Magruder, supra, pág. 19. Obviamente, hay motivos de aún más peso por qué el significado de las disposiciones de nuestra Constitución deba establecerlo este Tribunal y no las cortes federales.([10])

Por los motivos expuestos, resolvemos que el Párrafo 2, Sección 11, Artículo II de nuestra Constitución no es una ley federal. Más bien es una disposición de la Constitución del Estado Libre Asociado de Puerto Rico, cuyo significado debe determinar este Tribunal. Suponemos que el caso de *Patton* requiere que un acusado renuncie personalmente al jurado en las cortes federales. Pero la Convención Constituyente no incorporó este requisito en el Párrafo 2. En lugar de ello dejó a la Asamblea Legislativa la forma de renunciar el derecho al jurado. Y ésta no ha enmendado el art. 178 del Código de Enjuiciamiento Criminal, que es la ley que cubre esta cuestión. Por tanto el problema se reduce a determinar si el art. 178 exige que el acusado renuncie personalmente el juicio ante jurado.([11])

---

([10]) El Juez Presidente Magruder de hecho ha sugerido que se elimine el derecho de apelación de este Tribunal al Tribunal de Apelaciones para el Primer Circuito y que se sustituya con una disposición al efecto de que nuestras sentencias ". . . serán revisadas solamente por la Corte Suprema de los Estados Unidos, y ello sobre la misma base que la jurisdicción concedida actualmente a la Corte Suprema para revisar sentencias del tribunal más alto de un Estado." Magruder, supra, pág. 19.

([11]) El argumento del acusado adolece de dos fallas más. Primero, aún si él tuviere razón al decir que el Párrafo 2 es una ley federal, dicho párrafo no dispone específicamente que el acusado debe renunciar personalmente su derecho a juicio por jurado. El Congreso no estaba obligado a proveer juicio por jurado en Puerto Rico. *Balzac* v. *Porto Rico*, supra. *A fortiori*, la Constitución no le exigía al Congreso que adoptara—y no adoptó—para las cortes locales de Puerto Rico la regla judicialmente creada y desarrollada por la Corte Suprema de los Estados Unidos en el caso de *Patton* en relación con la renuncia de juicio por jurado al interpretar la Constitución Federal.

En segundo lugar, la regla *Patton* requiere el consentimiento del Pueblo y del tribunal sentenciador, así como del acusado, antes de que la renuncia a juicio por jurado sea efectiva. Aunque el acusado arguye que estamos obligados por la regla *Patton*, su teoría aparentemente es que sólo el acusado tiene que dar su consentimiento, siempre que lo haga personalmente y no a través de su abogado. Pero si convenimos con el acusado en que el caso de *Patton* nos obliga como cuestión de derecho constitu-

## II

 Pasamos ahora a la contención del apelante al efecto de que bajo el art. 178 del Código de Enjuiciamiento Criminal un acusado debe renunciar el juicio por jurado personalmente más bien que a través de su abogado. Arguye que el art. 5 del Código de Enjuiciamiento Criminal—copiado del art. 684 del Código Penal de California—requiere este resultado en vista de su lenguaje y en vista de los casos de California que resuelven que las partes en un caso criminal son El Pueblo y el acusado y que éste no incluye a su abogado.(12) El acusado también descansa en los casos de California que resuelven que el juicio ante jurado en un caso criminal debe ser renunciado por el acusado personalmente.

Existen, sin embargo, varias diferencias entre nuestra situación y la de California. En primer lugar, en el desarrollo de esta cuestión en California hubo dos etapas. Antes de 1927 bajo la Sección 7 del Artículo 1 de la Constitución de California se podía renunciar el juicio ante jurado solamente en casos de delito menos grave "con la anuencia de ambas partes."(13) Se resolvió bajo esta disposición que ni el acusado ni su abogado podían renunciar el derecho a juicio

cional, estaríamos obligados a resolver que el consentimiento del Pueblo y de la corte son igualmente necesarios y que el art. 178 del Código de Enjuiciamiento Criminal es nulo en tanto en cuanto confiere exclusivamente al acusado el privilegio de renunciar al jurado. Además, el caso de *Patton* aparentemente exige unanimidad en el veredicto del jurado, *cf. Hibdon v. United States*, 204 F.2d 834 (C.A. 6, 1953), criticado adversamente en 52 Mich.L.Rev. 911, mientras que la Sección 11 del Artículo II de nuestra Constitución permite un veredicto por una mayoría de votos no menor de nueve.

(12) El art. 5 dispone como sigue: "El proceso criminal se entabla a nombre del Pueblo de Puerto Rico, como parte actora contra la persona acusada del delito."

Véanse 7 Cal.Jur. 896; 14 Cal.Jur.2d 190–1; *People* v. *Jung Qung Sing*, 11 Pac. 755 (Cal., 1886).

(13) El Artículo 1 de la Sección 7 de la Constitución de California leía en parte, con anterioridad a 1927, como sigue: "El juicio ante jurado puede renunciarse en toda causa criminal que no sea grave, con la anuencia de ambas partes, expresada en corte abierta, y en casos civiles por el consentimiento de las partes, hecho constar en la forma que la ley determine."

ante jurado en un caso grave. *Ex parte Bracklis*, 198 Pac.
659 (Cal. 1921) ; *People* v. *Nakis*, 193 Pac. 92 (Cal., 1920).
Pero el apelante no ha citado caso alguno y ninguno hemos
encontrado que de hecho resuelva que antes de 1927 el juicio
ante jurado no podía renunciarse bajo la Sección 7 del Ar-
tículo 1 de la Constitución, a través del abogado, en un caso
menos grave. *Cf. Goodman* v. *Superior Court*, 96 Pac. 395
(Cal., 1908) ; *In re Fife*, 42 Pac. 299 (Cal., 1895) ; *Ex
parte Wong Yon Ting*, 39 Pac. 627 (Cal., 1895) ; *Taylor* v.
*Reynolds, Judge*, 28 Pac. 688 (Cal., 1891) ; *Powelson* v.
*Lockwood*, 23 Pac. 143 (Cal., 1890) ; *In re Miller*, 22 Pac.
1113 (Cal., 1890) ; 15 Cal.Jur. 345; 8 Cal.Jur. 666; 7 Cal.
Jur., *Ten Year Supp., 1945 Revision*, 423–4; 14 So.Calif.
L.Rev. 473.(14) Por tanto parecería que, antes de 1927, el
art. 684 del Código Penal de California—equivalente al art.
5 de nuestro Código de Enjuiciamiento Criminal—no tenía la
importancia que le atribuye el acusado en relación con la re-
nuncia al juicio ante jurado.

Sin embargo, echando a un lado la cuestión de si, antes
de 1927, un acusado venía obligado a renunciar el juicio ante
jurado personalmente en casos de delitos menos graves, la si-
tuación en California después de 1927 es más pertinente al
problema ante nos. En dicho año la Constitución de Cali-
fornia fué enmendada para disponer en parte que ". . . El
juicio ante jurado puede renunciarse en toda causa criminal,
con la anuencia de ambas partes, expresada en corte abierta
*por el acusado y su abogado*, y en casos civiles por el con-
sentimiento de las partes, hecho constar en la forma que la
ley determine." (Bastardillas nuestras.) A nuestros fines,
esto era mucho más específico que la cláusula anterior e hizo
constar claramente que el acusado personalmente, así como

---

(11) Dos casos citados por el apelante—*People* v. *García*, 277 Pac. 747
(Cal., 1929), y *People* v. *Spinato*, 280 Pac. 691 (Cal., 1929)—dicen en *dicta*
que con anterioridad a 1927 la regla era que en un caso menos grave el
acusado debe renunciar al jurado personalmente. Sin embargo, esos casos
no envolvían delitos menos graves y fueron resueltos después de la efec-
tividad de la nueva disposición constitucional.

su abogado, deben renunciar el jurado en una causa criminal. Y los casos resueltos bajo la enmienda de 1927—que son en los que el apelante descansa aquí—uniformemente así lo han resuelto. *People* v. *Washington*, 213 P.2d 70 (Cal., 1949); *People* v. *Walker*, 201 P.2d 6, 16 (Cal., 1948); *People* v. *Pughsley*, 168 P.2d 27 (Cal., 1946); *People* v. *Voice*, 157 P.2d 436 (Cal., 1945)'; *People* v. *Bastio*, 131 P.2d 614 (Cal., 1942); *People* v. *Noland*, 86 P.2d 363 (Cal., 1939); *People* v. *Medina*, 49 P.2d 332 (Cal., 1935); *People* v. *Pincus*, 21 P.2d 964 (Cal., 1933); *People* v. *Rumsey*, 15 P.2d 780 (Cal., 1932); *People* v. *Woods*, 14 P.2d 313 (Cal., 1932); *People* v. *Spinato*, supra; *People* v. *Wilkerson*, 278 Pac. 466 (Cal., 1929); *People* v. *García*, supra; 14 So.Calif.L.Rev. 473, 474.

En Puerto Rico no tenemos disposición constitucional específica como la que existe ahora en California que exige que el acusado renuncie personalmente al juicio ante jurado. Aquí la situación es muy diferente. Nuestra Constitución guarda silencio en cuanto a la renuncia. Además, el art. 178—nuestro único estatuto que trata específicamente sobre este asunto—es diferente al art. 1042 del Código Penal de California, que exige una renuncia afirmativa. Por el contrario, bajo el art. 178 el juicio ante jurado debe escogerse afirmativamente o de lo contrario queda renunciado. *Pueblo* v. *Campos*, 69 D.P.R. 898, 902. Por consiguiente, no podemos ver cómo en Puerto Rico el art. 5 puede interpretarse como que injerta en el 178 un requisito al efecto de que deba tomarse alguna "acción" por parte del acusado personalmente a fin de que el jurado quede renunciado válidamente. El art. 178 dispone en efecto que el guardar silencio durante la lectura de la acusación constituye una renuncia al juicio por jurado. Parecería absurdo decir que tal "silencio" debe ser el del acusado más bien que el de su abogado. Por consiguiente nada hay en los art. 178 y 5 que haga la renuncia por el abogado insuficiente y requiera una renuncia afirmativa del acusado en persona de su derecho a juicio ante ju-

rado. *Territory* v. *Van Dalden,* 33 Haw. 113, 131 (1934) ; véase *Shores Co.* v. *Iowa Chemical Co.,* 268 N.W. 581 (Iowa, 1936). ([15])

El apelante sostiene que en vista de que el juicio ante jurado en una causa criminal se ha elevado al nivel de un derecho constitucional, debemos resolver que sólo puede ser renunciado mediante acción afirmativa del acusado. Pero estatutos similares al art. 178—que disponen que el no escoger el juicio por jurado constituye renuncia del mismo—han sido declarados válidos en estados en donde el juicio ante jurado es un derecho constitucional. A.L.I. Code of Criminal Procedure, *Commentary,* 807, 809 ; 50 C.J.S. 819, casos citados en el escolio 92 ; *State* v. *Berg,* 21 N.W.2d 777 (Iowa, 1946) ; véase Orfield, supra, págs. 390–5. En igual forma, la Constitución Federal establece el derecho a juicio ante jurado en casos civiles; sin embargo, la Regla 38(*d*) de las Reglas Federales de Procedimiento Civil dispone que el juicio ante jurado queda renunciado a menos que se solicite. 5 Moore's *Federal Practice,* 2da. ed., págs. 105, 332–3. En síntesis la Asamblea Legislativa está en libertad para hacer su propia determinación sobre esta cuestión. Y ha dejado sin enmendar la disposición del art. 178 al efecto de que el no escoger el juicio ante jurado constituye una renuncia al mismo.

---

([15]) El acusado afirma que su posición es sostenida por el hecho de que él se decidió por el jurado durante la lectura de la acusación y que su abogado más bien que él personalmente renunció al jurado al comienzo del juicio. Discrepamos. El récord no especifica si el acusado hizo personalmente su elección durante la lectura de la acusación o a través de su abogado. Pero lo que es más importante es que el significado del art. 178 no depende de la conducta fortuita del acusado o de su abogado durante la lectura de la acusación y en el juicio.

Debe añadirse que no hay alegación de fraude o de otra falta que vicie el consentimiento dado por el acusado a través de su abogado. Los autos demuestran que dos de los tres abogados que representan al acusado en apelación comparecieron por él en el juicio. Uno de ellos dijo: "Nosotros, después de haber consultado al acusado, renunciamos a juicio por jurado. Vamos a ver el caso por tribunal de derecho."

En el caso de *Jiménez* v. *Jones*, 74 D.P.R. 260, resolvimos que una sentencia basada en una alegación de culpabilidad hecha por el abogado del acusado más bien que por éste era nula. Pero nos vimos obligados a llegar a esta conclusión debido al lenguaje claro y mandatorio del art. 164 del Código de Enjuiciamiento Criminal al efecto de que "La confesión puede hacerse sólo por el acusado *en persona* en sesión pública del tribunal, excepto cuando la acusación sea contra una corporación, en cuyo caso podrá hacerla el abogado defensor." (Bastardillas nuestras.) En nuestra opinión en el caso de *Jiménez* indicamos que las cortes federales han rechazado esta regla como basada en un formulismo arcaico que no tiene relación alguna con la justicia sustancial. En los casos posteriores—*Pueblo* v. *Cruzado*, 74 D.P.R. 934, y *Pueblo* v. *Vargas*, 74 D.P.R. 144, confirmado en 210 F.2d 789 (C.A. 1, 1954)—claramente hicimos constar que en ausencia de una expresa disposición estatutaria similar al art. 164, la actuación del acusado a través de su abogado de ordinario sería obligatoria para dicho acusado. Contrario al art. 164, los términos de los arts. 178 y 5 no nos obligan a llegar en este caso al resultado obsoleto y poco práctico que exigió el art. 164 en el caso de *Jiménez*.

En los casos de *Pueblo* v. *Vargas*, supra, y *Pueblo* v. *Cruzado*, supra, se resolvió que toda vez que la actuación de un abogado generalmente obliga a su cliente, el abogado de un acusado puede renunciar el derecho de éste a carearse con los testigos en su contra sin el consentimiento expreso del acusado. El acusado, por medio de su abogado, habiendo asumido esta actitud en la esperanza de que la misma le beneficiaría, no puede luego repudiarla.([16]) En igual forma,

---

([16]) "Cuando un acusado es representado por abogado, es generalmente de presumirse que el abogado adapta sus tácticas en el juicio a lo que en su opinión beneficia más al acusado. Si éste, estando presente, no manifiesta su inconformidad, es por lo corriente razonable presumir que aprueba, o por lo menos se somete, a las decisiones tomadas en corte abierta a nombre suyo por su abogado." *Cruzado* v. *Poeple of Puerto Rico*, supra, 791.

bajo el art. 178 la elección de juicio por tribunal de derecho más bien que juicio ante jurado puede ser válidamente hecha por el abogado del acusado.

*La sentencia del Tribunal Superior será confirmada.*

El Juez Asociado Sr. Negrón Fernández, no obstante disentir en cuanto al resultado, expresa su conformidad con la parte primera de la opinión.

"Si hubiese sido preferible someter el caso del acusado a juicio por jurado o por tribunal de derecho, era asunto a determinarse por el acusado y su abogado y éstos tenían que determinarlo antes del juicio. . . . Sería una burla a la justicia decir que habiendo presentado voluntariamente su caso ante el juez y habiéndolo perdido, puede él entonces someterlo de nuevo a un jurado con la esperanza de salir mejor." *Fluty* v. *State,* 71 N.E.2d. 565, 568 (Ind., 1947).